Norman **SOLOMON,**
**Plaintiff-Appellant,**

v.

**HOUSTON CORRUGATED BOX CO., INC., et al., Defendants-Appellees.**

**No. 75–3374**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Jan. 26, 1976.

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Louis B. Paine, Jr., Hayden Burns, Houston, Tex., for Houston Corrugated Box.

B. R. Pravel, Houston, Tex., Terrence D. Dreyer, Dallas, Tex., for Frito-Lay Inc.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

This case involves one of the more unusual species of judgments in the judicial system, the granting of summary judgment in an antitrust case. Since we have determined that the district court's ruling was not erroneous, we affirm, with the hope that our action will contribute to the concept of efficient judicial administration. The substantial and material operative facts are not in dispute.

Plaintiff-appellant Norman Solomon is the owner and sole proprietor of United Carton Company (UCC) in Houston and engages in the corrugated carton business. This enterprise entails aspects other than dealing in used boxes, but this case is concerned largely with only that element of the business.

Formerly, UCC's sources of supply of used boxes were Frito-Lay, Inc. (Frito), Oak Farms Dairies, the Coca-Cola Company and Carnation. Of these four suppliers, Frito was the largest, supplying approximately 90% of UCC's boxes.

UCC had been dealing with these four suppliers for several years and had gradually achieved a reduction in the price paid them to two cents per box by late 1973. In January, 1973, Frito, Oak Farms Dairies, and Coca-Cola informed appellant that henceforth they would sell their boxes to defendant-appellee Houston Corrugated Box Company, Inc. (HCB), UCC's major competitor in the Houston used box trade.[1] HCB had of-

Robert O. Campbell, Houston, Tex., for plaintiff-appellant.

1. According to his deposition testimony, appellant had become aware, through Frito's Houston plant manager, Tim Dorough, that HCB had been soliciting the Frito used boxes for some time. In fact, prior to 1971, HCB had been the purchaser of the Frito boxes. Never-

fered Frito five cents per box and had agreed to pick up Frito's scrap paper and pay $45.00 per ton for it.

UCC's two cents per box arrangement with Frito had never involved a written agreement, nor was there a specific termination date. It was simply an oral, buy-sell agreement, terminable at will, between the two.[2] In the past appellant and Tim Dorough had also discussed the possibility of appellant's picking up Frito's scrap paper. Appellant had indicated, however, that he would be willing to undertake this task only if it was "absolutely necessary." No agreement concerning the scrap paper had ever been reached between Frito and UCC.

According to appellant's deposition testimony, when he talked to Dorough by phone after the contract termination, Dorough had told him that "his boss in Dallas" had instructed him to terminate the agreement with UCC and he had warned Solomon not to "make waves." At his deposition Dorough testified that he had not been directed to take this action by any superior, but had done so after a meeting of the Houston plant management, in the exercise of business judgment as plant manager. Dorough did indicate, however, that he had told appellant that if the Frito "higher-ups" discovered that he had turned down an offer of five cents per box in favor of the two cents per box agreement with UCC, he might "have some problems and probably get a reprimand."

Soon after the termination appellant called Dorough's office to make an offer of six cents per box, but Dorough never directly responded to this proposal. Appellant testified that he also counter-offered to pick up Frito's scrap paper. Dorough testified that he did not find this proposition acceptable because appellant had indicated in the past that he was not equipped, or did not wish, to handle scrap paper.[3] In his complaint appellant alleges that Frito refused to sell him boxes at any price, but at his deposition he admitted that the sole basis of this allegation was the fact that Frito never responded to his counter-proposal.

■  Appellant initially brought this action against HCB, Joe Levy (an HCB corporate officer who solicited the Frito account), Frito, Oak Farms and Coca-Cola. Carnation continued to sell boxes to UCC and was not made a defendant. He alleged violations of §§ 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 & 2 (1970), and sued under § 4 of the Clayton Antitrust Act, 15 U.S.C. §§ 12 et seq. (1970). On April 25, 1975, however, appellant voluntarily dismissed with prejudice Oak Farms Dairies and Coca-Cola,[4] leaving only HCB, Joe Levy and Frito as defendants.[5] In substance, then, appellant's claims under §§ 1 & 2 of the Sherman Act are now premised on

theless, appellant explained, he was not concerned with the possibility that HCB might reacquire the Frito supply because Dorough had indicated dissatisfaction with HCB on the basis of prior dealings with HCB in Dallas.

**2.** None of the relevant "contracts" between Frito and UCC or HCB were in writing and all were terminable at will.

**3.** See the text immediately following note 2, *supra.*

**4.** In his brief on appeal appellant asserts that he took this action, "due to the fact that [Oak Farms and Coca-Cola] supplied less than ten per cent of Solomon's total intake volume of used cartons and were negligible in the Appellant's resulting damages. . . . " Brief for

appellant at 5. This explanation does not withstand analysis.

An antitrust action is in the nature of a tort action and defendants are jointly and severally liable, *see, e. g., Wainwright v. Kraftco Corp.,* 58 F.R.D. 9, 11–12 (N.D.Ga.1973). Accordingly, the fact that the alleged actual damages caused appellant by Oak Farms and Coca-Cola was small proportionately did not diminish their liability and does not adequately explain their dismissal.

**5.** Hereinafter the remaining defendants (appellees), HCB, Joe Levy and Frito, will be referred to as "appellees." The original five defendants, Oak Farms, Coca-Cola and the appellees, will be referred to as "defendants."

the actions of HCB, a buyer of used cartons, Joe Levy, an officer of HCB, and Frito, a seller of used cartons.

In his complaint appellant alleged that Joe Levy had been attempting "to steal away Plaintiff's customers without very much success" and that the complained-of actions "were motivated by personal vindiction rather than profit." Appellant asserted that the five defendants had conspired and agreed that Frito, Oak Farms and Coca-Cola (through its subsidiary, Maryland Club Coffee Company) "would cease and desist from selling used corrugated boxes to the Plaintiff." Appellant further alleged that as a result of this action he was forced to renege on various contracts he had made to supply used boxes and that this result adversely affected interstate commerce. He also contended that the acts of the defendants had resulted in both the monopolization of the corrugated used box trade in the Houston area and in unreasonable restraint of that trade. Appellant asserted joint and several liability for threefold damages against all of the defendants, and also alleged malice and sought punitive damages, costs and attorneys' fees.[6]

In granting the motions for summary judgment of Frito, HCB and Joe Levy, the district court concluded that the dismissal of Oak Farms and Coca-Cola "changed the entire complexion" of the case and "fatally weakened its otherwise reasonably sturdy framework." The district court then held that it was "hard pressed to find a clearer or more classic case of a simple, unilateral refusal to deal." In the lower court's view the doctrine of *United States v. Colgate & Co.*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992

(1919), that such a refusal was not violative of the antitrust laws controlled. The district court did not err in its conclusions.

We are fully cognizant that summary judgment is drastic relief which must be applied with caution and that the pleadings of the party opposing it are to be liberally construed, *e. g., Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230, 234 (10th Cir. 1975). Summary judgment is not generally favored in antitrust cases, *see, e. g.. Clark v. United Bank*, 480 F.2d 235, 240 (10th Cir.), *cert. denied*, 414 U.S. 1004, 94 S.Ct. 360, 38 L.Ed.2d 240 (1973); *Williams v. Pennsylvania Co.*, 367 F.Supp. 1158, 1167 (E.D. Pa.1973). It is appropriate, however, when "it is plain that the allegedly unlawful practice does not exist, and that plaintiff's claim is without merit," *Capital Temporaries, Inc. v. Olsten Corp.*, 365 F.Supp. 888, 895 (D.Conn.1973), *aff'd*, 506 F.2d 658 (2d Cir. 1974). The mere allegation of the Sherman Act claim requirements of a contract, combination, or conspiracy for the purpose of restraining trade or interstate commerce and resulting damages are not sufficient to withstand a motion for summary judgment once they have been rebutted, *ALW, Inc. v. United Air Lines, Inc.*, 510 F.2d 52, 54–57 (9th Cir. 1975); *see, e. g., Kemp Pontiac-Cadillac, Inc. v. Hartford Automobile Dealers' Ass'n*, 380 F.Supp. 1382, 1389 (D.Conn.1974) ("glib and conclusory allegations" of conspiracy are insufficient to raise genuine issues in face of specific denials in sworn depositions and affidavits by defendants); *Searer v. West Michigan Telecasters, Inc.*, 381 F.Supp. 634, 643 (W.D.Mich.1974) (the policy of sparing use of summary proce-

---

**6.** Appellant appended a state law claim for interference with advantageous business relationships. He did not, however, allege diversity of citizenship, and the record establishes that diversity does not exist here. In view of our affirmance of the granting of summary judgment, and the failure of appellant to brief the issue of the appended state claim, we find it unnecessary to deal with it. This disposition should not be viewed as prejudicing in any way a possible state court action by appellant. *See, e. g., UMW v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Scranton Construction Co. v. Litton Industries Leasing Corp.*, 494 F.2d 778, 783 (5th Cir. 1974), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 774, 42 L.Ed.2d 800 (1975).

dures in antitrust cases "is no warrant for every plaintiff who can draft an antitrust complaint, no matter how groundless or improbable its allegations, to force his claim to trial despite its deficient factual underpinnings"); *Murdock v. City of Jacksonville*, 361 F.Supp. 1083, 1086–87 (M.D.Fla.1973) ("Even in an antitrust case a party cannot rest on the allegations contained in his complaint but must, in opposition to a motion for summary judgment, come forward with affidavits setting forth specific facts showing that there is a genuine issue of material fact for trial") (citations omitted).

We have recently had occasion to apply these principles in *Scranton Construction Co. v. Litton Industries Leasing Corp.*, 494 F.2d 778, 782 (5th Cir. 1974), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 774, 42 L.Ed.2d 800 (1975), wherein we stated:

> We have searched the record in vain for evidence supporting plaintiffs' allegations of a combination or conspiracy against them between Litton and anyone in the area of plaintiffs' claims. Proof of this is, of course, essential to plaintiffs' case under § 1 of the Sherman Act and to its conspiracy claims under § 2. Facing defendants' sworn challenge to the existence of such a conspiracy, it was up to plaintiffs to produce *significant probative evidence* —by affidavit or deposition—demonstrating that a *genuine* issue of fact existed as to this element of the complaint, if summary judgment was to be avoided. (citations omitted, emphasis added).

Similarly, a review of the record in this case reveals a total lack of any significant probative evidence, by means of sworn affidavits or depositions, support-

ive of appellant's contention that genuine issues of material fact exist.

■ Appellant argues that Frito agreed to sell its used boxes solely to HCB and that the motive for this action was to ensure that HCB would monopolize the trade, *i. e.*, that Dorough did not terminate his arrangement with UCC for a valid business purpose, but did so on orders from "higher ups." There is not, first of all, one iota of evidence supporting appellant's bald assertion of an exclusive selling agreement. Quite to the contrary, all the evidence supports the conclusion that any and all agreements between both UCC and HCB and the used box suppliers were terminable at will and not restrictive in any sense. Secondly, in his deposition Tim Dorough specifically denied that his termination of UCC occurred as a result of directions from his superiors. Dorough testified that his action was the result of the decision of local management and that its motivation was exclusively monetary: not only did HCB offer Frito two and one-half times as much for each box, but it also offered Frito a profitable bargain for its scrap paper. Dorough's decision to continue with HCB, to give that enterprise the opportunity to demonstrate its services,[7] in spite of appellant's subsequent offer of six cents per box and possibly an agreement on the scrap paper, does not evidence any ulterior dealings. HCB's five cent offer was significantly higher than the two cents Solomon had been paying and any reasonable businessman would have reacted favorably to it and disfavorably to appellant, despite the six cent offer by him, in light of the substantial price dichotomy between appellant's previous payments and HCB's offer. Moreover, Dorough indicated some skepticism concerning appellant's ability to fulfill any scrap paper

---

7. At his deposition Irvin Levy, secretary-treasurer of HCB, admitted that Dorough attempted to "renege" on his understanding with HCB shortly after its consummation, apparently because of Solomon's counter-proposal. He further testified, however, that he persuaded Do-

rough to give HCB an opportunity to perform. HCB did perform pursuant to the accord for several months. In November, 1974, Frito altered its operation and discontinued selling its used boxes for use as such.

arrangement since he did not possess the equipment necessary to handle scrap paper. In substance, appellant alleged an exclusivity agreement and ulterior motivation and appellees rebutted these allegations by substantial, sworn, reasonable, and believable evidence concerning business dealings and judgment. Appellant offered nothing else to support his bare assertions. We cannot say, in these circumstances, that the district court erred in rendering summary judgment for appellees.

■ Appellant asserts that the depositions of Joe and Irvin Levy "are unclear, very questionable, and evasive as to matters of intent and state of mind in regard to the shutting off of the box supply to Solomon. . . ." Therefore, it is argued, summary judgment was an inappropriate vehicle to determine these issues of intent, which depend so much on credibility judgments. The flaw in this contention is that appellant has never presented any credible evidence, by affidavit, deposition or documentation, other than his own general and conclusory statements, that any monopolistic conspiracy or agreement existed among the alleged wrongdoers. In light of this fatal hiatus, the intent, motive, or state of mind of the defendants are irrelevant. There simply is no Sherman Act violation, no matter how malevolent the competition may be, without a contract, combination, monopoly or conspiracy in restraint of trade.

Appellant would have us hold that his own unsupported and conclusory pleadings, deposition testimony and affidavit, to the effect that an agreement or conspiracy existed, are sufficient to preclude summary judgment in this case. We do not hold that in a proper case and in all circumstances the statements of the antitrust plaintiff alone are not sufficient to defeat summary judgment.[8] We do

conclude that in the circumstances and posture of this case such statements are insufficient.

Here, appellant filed his complaint alleging, in general and conclusory fashion, that the defendants conspired and agreed to destroy appellant's used box business. Defendants responded by denying the allegation of a conspiracy or agreement and the allegation that they refused to sell boxes to appellant at any price. The defendants then mailed written interrogatories to appellant asking him, among other things, to identify every person who had knowledge of and could testify to the facts surrounding the alleged conspiracy, or the alleged refusal to sell to appellant. In response to these queries, appellant stated either that he had no first hand knowledge of any meetings or agreement between or among the parties, but he assumed that such had occurred, or that Joe Levy and Tim Dorough were the only persons he could identify as conspirators, or he simply refused to answer this question. With respect to interrogatories that asked him to specify the basis of his assertion that the defendant enterprises had told him "that he could purchase no more boxes at any price," appellant responded that he had received this information from each of the three suppliers either by phone call or through a conversation with a warehouseman, and that there were no written records or other evidence of the conversations. Of course there is no dispute about the fact that the defendant suppliers terminated their selling arrangements with appellant. As earlier noted, the suppliers received much higher prices from HCB. There simply is no evidence of any conspiracy or agreement amongst the defendants.

In contrast to the assertions by appellant, appellees presented the depositions of Irvin Levy and Tim Dorough. Dorough specifically denied that he knew

---

8. Indeed, summary judgment would not be appropriate if the defendants' responses to plain-tiff's allegations consisted only of general and conclusory pleadings.

or had ever dealt with anyone from the Houston Coca-Cola division and similarly denied that he knew or had ever talked to any person from Oak Farms Dairies in Houston. Dorough also specifically stated that he had never agreed with anyone not to sell boxes to appellant. Likewise, Irvin Levy specifically denied discussing with Dorough appellant's relationship with HCB.[9] Faced with these depositions, appellant dismissed Oak Farms and Coca-Cola from this action.

Appellant has refused to come forward with any evidence supporting his allegation of an agreement or conspiracy to restrain trade, despite the flat denials of his allegations by the alleged conspirators. His conspiracy claim is based on a mere assumption, by his own admission. Even his claim that defendants refused to sell to him is based solely on alleged telephone conversations and other hearsay statements that he admits are not substantiated by any written memoranda or other supporting evidence.[10] By presenting the denials of the appellees through their depositions, appellees shifted the burden to appellant to produce significant probative evidence at least of the *existence* of the alleged agreement or conspiracy, and this he failed to do. Admitting the truth of all facts relied on by appellant, no antitrust violation has been shown. A mere unilateral refusal to sell to appellant, with no proof of any agreement or conspiracy, cannot support allegations of a violation of federal antitrust statutes. In light of this hiatus, the intent or motives of Joe Levy, Frito and HCB are not material issues.

Appellant contends that an agreement can be inferred by the action of Frito in declining appellant's offer of six cents per box because this refusal was against sound business judgment. As noted above, however, Tim Dorough and Irvin Levy specifically testified to the reasons for and the circumstances surrounding the refusal in their depositions. Appellant has offered nothing to rebut these explanations other than his own mere conclusion that the refusal was not an exercise of sound business judgment. Appellant's unsupported assessment of the situation is insufficient to raise a genuine issue of material fact concerning whether the refusal was premised on sound business judgment.

Appellant argues that the district court erred in concluding that his dismissal of Oak Farms and Coca-Cola fatally weakened his case. It is well-settled that the Sherman Act's conspiracy or agreement requirement is not met by a "conspiracy" between a corporation and its corporate officer, *e. g., Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.,* 416 F.2d 71, 82–83 (9th Cir. 1969), *cert. denied,* 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970); *Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir. 1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953). Logically, then, in view of the dismissal of Oak Farms and Coca-Cola by appellant,[11] the only proscribed agreement that could be involved in this case is one between Joe Levy or HCB and Frito. Again, however, the only "evidence" of any such agreement is the unsupported "assumption" of it by appel-

---

**9.** Irvin Levy categorically denied having any conversations with Dorough, other than that discussed in note 7 *supra* (in which he convinced Dorough to give HCB a chance to perform), after his five cents per box, $45 per ton offer, concerning "the possibility of not continuing with [HCB] and going back to Solomon."

**10.** In response to questioning by counsel for Frito and Coca-Cola, Solomon stated that the

only basis in his own knowledge for his allegations of the existence of a combination, conspiracy or agreement among Frito, Coca-Cola, and Oak Farms to refuse to sell to him was that the three had stopped selling their boxes to him. *See generally* the text between notes 8 and 9 and note 9, *supra.*

**11.** *See* note 4, *supra.*

lant. This "assumption" was specifically rebutted by the deposition testimony previously discussed. The only reply to this testimony was the general statement by appellant in an affidavit that, "In the latter part of the year 1973 and in January of 1974 [HCB] entered into agreements with [Frito, Oak Farms and Coca-Cola] whereby sales would be made exclusively to them. . . ." Especially in light of the specific denials in the depositions and the dismissal by appellant of Oak Farms and Coca-Cola, this mere inferentially accusatory statement by appellant does not constitute significant probative evidence of the existence of a genuine issue of material fact with respect to the existence between HCB and any or all of the defendants of an agreement or conspiracy in restraint of trade. The general accusations of appellant, admittedly based on mere assumptions, simply do not create an actual contest of the denials by defendants, cf. *Saenz v. University Interscholastic League*, 487 F.2d 1026, 1028 (5th Cir. 1973). Considering all of the factors involved, it is our conclusion that the alleged conspirators, Oak Farms, Coca-Cola and Frito-Lay, each ceased doing business with appellant for individually motivated reasons and not as a result of any agreement or conspiracy not to do business with appellant.

Finally, in view of our conclusion that summary judgment was not inappropriate with respect to the § 1 Sherman Act claim, we are in agreement with the district court that appellant's § 2 claim is likewise without merit. Mere refusal to deal, without an agreement or conspiracy, simply is not *per se* a violation of the antitrust laws, *see, e. g., Dahl, Inc. v. Roy Cooper Company, Inc.*, 448 F.2d 17 (9th Cir. 1971); *Daily Press, Inc. v. United Press International*, 412 F.2d 126, 134–35 (5th Cir.), *cert. denied*, 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969).

Appellant having failed to establish the existence of a genuine issue of material fact, the district court did not err in granting summary judgment under Rule 56, Fed.R.Civ.P.

Affirmed.