**The COMPUTER CONNECTION, INC.**

**v.**

**APPLE COMPUTER CORPORATION and Compumark, Inc.**

**Civ. A. No. 84-2382 "A".**

United States District Court,
E.D. Louisiana.

Nov. 8, 1985.

Jacques F. Bezou, New Orleans, La., for plaintiff.

Michael R. Fontham and Denise M. Pilié, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for defendant Apple Computer.

Richard M. Marchewka, Fawer, Brian, Hardy & Zatzkis, New Orleans, La., for defendant Compumark.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court upon motions for summary judgment filed on behalf of defendants, Apple Computer and Compumark, Inc., seeking dismissal of plaintiff's complaint for damages under the state and federal antitrust laws as a result of plaintiff's termination by defendant Apple as a dealer of Apple computer products.

The motions for summary judgment were both filed September 10, 1985, together with supporting affidavits, deposition testimony and exhibits. On September 17, 1985, this Court granted plaintiff's motion to continue hearing on the motions for summary judgment until October 9, 1985. On October 1, 1985, plaintiff filed opposition to defendants' motions, together with a statement of material facts in dispute. No counter-affidavits or deposition testimony were submitted to the Court by the plaintiff.

At the hearing before the Court on October 9, 1985, plaintiff requested additional time for discovery to oppose the motions and particularly, to depose William Lucky, Chairman of the Board and Chief Operating Officer of defendant Compumark. The Court thereupon gave the parties an opportunity to submit supplemental memoranda following Mr. Lucky's deposition, and supplemental memoranda were submitted by movants. Having now considered the memoranda of the parties, the arguments of counsel, the affidavits submitted by movants, the exhibits to movants' papers and the deposition of Mr. Lucky, the Court concludes there is no issue of material fact and movants are entitled to judgment as a matter of law, dismissing plaintiff's complaint with prejudice, due to the existence of valid business reasons for terminating the plaintiff as an Apple dealer and the absence of a conspiracy involving Apple and/or Compumark. The absence of any allegations or showing of public injury operates as a further ground to dismiss that portion of plaintiff's complaint alleging vertical nonprice conspiracy, as will be explained more fully below.

### Factual Background

The Computer Connection, run by Will Holmes, was an authorized Apple dealer

from late 1982 to February 18, 1984. The only contract in the record of the Court is Apple's Authorized Dealer Sales Agreement with plaintiff, attached as Exhibit "A" to Apple's motion documents. This contract was dated May 31, 1983 and was, by its terms, to expire in March, 1984.

In January, 1984, Apple notified Mr. Holmes of the Computer Connection's termination pursuant to paragraph 7(c) of the Sales Agreement, which provides:

> (c) Either party may terminate this Agreement, at will, at any time, with or without cause, by written notice given to the other not less than THIRTY (30) DAYS prior to the effective date of such notice.

Termination was effective February 18, 1984.

Plaintiff's counsel vigorously contested in open court the events leading to the termination as set forth by the movants in their statements of undisputed material facts. However, plaintiff provided the Court with no testimony or documentary evidence in support of plaintiff's contentions.

From such uncontroverted testimony,[1] it appears that in 1983 the contract signed by Mr. Holmes on behalf of Computer Connection with Apple authorized the sale of Apple II and Apple III products. *See* Exhibit A–1 to Authorized Apple Dealer Sales Agreement. In 1983, however, Apple also began selling a new product called the "Lisa" computer, a more sophisticated product, intended for business rather than home use. The sale of the "Lisa" computer was permitted only by specifically authorized dealers, as the "Lisa" requires specially trained sales and service personnel and a special spare parts inventory. For these reasons, many Apple dealers either did not apply or were not approved to carry Lisas. See Affidavit of Rick Dyer, Southwest Region Manager of Apple Computer during the time in question, Exhibit "D" to Apple's motion. See also Affidavit of Fritz Aldrine, Area Sales Manager for Apple Computer, Exhibit "E" to Apple's motion.

The Computer Connection was never authorized to sell the Lisa computer but, nevertheless, procured and sold several Lisa computers in late 1983. When Apple Computer became aware of the sale of Lisa computers by the plaintiff, Apple advised Mr. Holmes to stop selling the Lisa computer and that Mr. Holmes could not sell Lisas without authorization. See Affidavit of Joe Grimes, Apple's Exhibit "C",[2] and Affidavit of Mr. Dyer, Apple's Exhibit "D". See also Second Supplemental and Amending Complaint, Paragraph III. During a conversation with Mr. Dyer, Mr. Holmes conceded selling Lisas without authorization. Mr. Holmes represented he would stop selling Lisas, but it was later discovered he continued to do so even after being warned not to. See Affidavit of Mr. Dyer, Apple's Exhibit "D". See also Affidavit of Mr. Aldrine, Exhibit "E", as to the confirmation that Mr. Holmes continued to place the Lisa computer for sale.

Thereafter, Mr. Holmes was terminated as an Apple authorized dealer, as permitted by the Sales Agreement. The uncontroverted affidavits show the termination was a result of the unauthorized sale of Lisas followed by Mr. Holmes' deliberate misrepresentations regarding such sales. See Affidavits of Mr. Grimes, Mr. Dyer and Mr. Aldrine. Mr. Aldrine's affidavit further shows he made the final decision to terminate plaintiff.

It is admitted by movants that co-defendant Compumark complained to Apple regarding Computer Connection's sales practices. However, movants urge that the complaints concerned plaintiff's advertising practices (e.g., Affidavit of Jim Ruhs, then

---

**1.** Apple submitted Affidavits of Messrs. Grimes, Dyer, Aldrine and Fiddler. Compumark submitted Affidavits of Messrs. Dyer, Ruhs, Graf, Weimer and Aldrine.

**2.** At the time in question, Mr. Grimes was employed by Computer Representatives Inc. as a District Sales Manager. Computer Representatives in turn acted as a sales representative for Apple to Apple dealers.

a sales representative for Apple),[3] whereas Mr. Holmes' deposition testimony suggests that the complaints concerned plaintiff's price cutting practices. For example, plaintiff alleges that Compumark's principal, Mr. Lucky, contacted other Apple dealers to induce them to complain of plaintiff's price cutting, and in support of this allegation, Mr. Holmes testified that Mr. Lucky complained to a competitor, David Graf, regarding price wars between Compumark and plaintiff, which complaints were relayed to Mr. Ruhs and from Mr. Ruhs to Mr. Holmes. See Deposition of Will Holmes, pp. 249–50 and 254. Mr. Holmes also testified to learning from Mr. Ruhs that Mr. Lucky called Apple's Mr. Dyer in Mr. Ruhs' presence to complain of plaintiff's pricing. See Holmes Deposition, p. 249. However, Compumark submitted affidavits of Mr. Ruhs, Mr. Graf and Mr. Lucky to the contrary, and Mr. Holmes admitted he had no proof that any Apple dealers acted upon Mr. Lucky's alleged request. See Deposition of Will Holmes, p. 273.

■ Pretermitting the question whether such hearsay within hearsay would be admissible at trial,[4] the Court will accept as true, for purposes of this motion, that Compumark complained to other dealers and to Apple regarding plaintiff's prices. Thus,

the Court will not weigh the competing allegations or the alleged justifications for complaints about unauthorized sales, where the complaints emanate from an authorized competitor who has expended time and money to sell a product according to the manufacturer's requirements. Nevertheless, movants' affidavits show Apple had permissible and independent reasons for terminating plaintiff, and plaintiff has not rebutted this testimony by demonstrating in the record of these proceedings a discernible causal connection between Compumark's complaints and plaintiff's termination as an Apple dealer.[5]

This absence of a conspiracy defeats plaintiff's allegations of antitrust violations arising from both the conspiracy to fix prices and the conspiracy to enforce standardized terms and conditions upon which computers are sold, in light of the authorities discussed below.[6] However, legal authority also reveals the insufficiency of plaintiff's allegations as to the effects of any conspiracy, providing an additional basis for dismissal of plaintiff's claims of vertical nonprice restrictions.

In this regard, plaintiff alleges that the defendants' actions eliminated competition in the market for the sale of computers and raised, fixed and stabilized, at a high non-

3. Mr. Ruhs is now employed as Major Accounts Representative of Epson America South West. His affidavit does not specify his employment at the time in question.

4. Inadmissible hearsay is not entitled to any weight in considering a motion for summary judgment. *See Pan-Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 556 (5th Cir.1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981); *Joe Regueira, Inc. v. Am. Distilling Co.,* 642 F.2d 826, 830 (5th Cir.1981). In this instance, the Court questions whether the hearsay statements of Mr. Graf, a non-party, would be admissible, and whether Mr. Ruhs is sufficiently identified with Apple so as to render his hearsay statements admissible as a party admission or otherwise. Plaintiff has not made any showing or argument as to the admissibility of such statements.

5. Nor has plaintiff submitted any argument or testimony to rebut the affidavit of Mr. Fiddler regarding the lack of involvement on the part of

D.H. Holmes and/or Computer Depot in plaintiff's termination. Moreover, Mr. Holmes admitted he had no evidence that D.H. Holmes asked Apple to terminate Computer Connection as an Apple dealer. See Will Holmes Deposition, pp. 98–99. Plaintiff merely alleges that Mr. Dyer's testimony would reveal a [presumably illegal] connection between the D.H. Holmes dealership and plaintiff's termination. No such testimony has been shown to the Court, and Mr. Dyer's affidavit affirmatively contradicts Mr. Holmes' admitted speculation.

6. Plaintiff alleges that Apple, Compumark and other Apple dealers were involved in a conspiracy "(a) to agree upon and fix prices charged to ultimate consumers of the Apple Computer; (b) to agree upon and enforce standardized terms and conditions upon which computers were to be offered for sale and to otherwise eliminate competition in the sale of computers but for defendant, Compumark." *See* Paragraph VIII, First Supplemental and Amending Complaint filed August 21, 1984.

competitive level, the prices plaintiff and others paid for computer services and products in Louisiana and standardized the terms and conditions upon which computers could be sold. Plaintiff nowhere specifies whether any computers other than Apple computers were affected by the alleged violations, and a reading of the First Amending and Supplemental Complaint as a whole shows that plaintiff's allegations are directed entirely toward Apple products. *See* paragraph XI.

By way of Second Supplemental and Amending Complaint, plaintiff sought to rectify certain deficiencies claimed by defendant Apple in a motion to dismiss filed October 22, 1984. Plaintiff there alleged facts which, if taken as true, would tend to establish that plaintiff ordered five Lisas which it was unable to sell as a result of its termination and that these events had the effect of causing fewer Lisa computers to be sold to the public. There are no other allegations, much less sworn testimony or documents, regarding the purported effects of the antitrust violations alleged upon intrabrand competition for any given market. There is absolutely nothing in the record regarding any adverse effect of the actions at issue on intrabrand competition.

In sum, the affidavits and documents attached to movants' pleadings show that there were valid business reasons for plaintiff's termination as an Apple dealer; that Apple acted unilaterally and for those reasons to terminate the plaintiff; that there was no concert of action among Apple dealers and Apple to terminate plaintiff because of any price cutting or other action on plaintiff's part; and that the competition in the computer market remained vigorous throughout.

### Discussion of Authorities

■■■ In order to recover damages under Section 1 of the Sherman Act, an antitrust plaintiff must prove a contract, combination or conspiracy in restraint of trade. *See* 15 U.S.C. § 1; *Solomon v. Houston Corrugated Box Co.,* 526 F.2d 389, 394 (5th Cir.1976) (Court affirming grant of summary judgment in favor of defendant). Accordingly, a dealer who is terminated by the unilateral action of the manufacturer cannot recover antitrust damages from that manufacturer due to the termination. *Monsanto Co. v. Spray-Rite Serv. Corp.,* 465 U.S. 752, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1985). Moreover, proof of termination following competitor complaints [7] is not sufficient to support an inference of concerted action. *Id.*

■■■ As properly emphasized by movants, "When faced with defendants' sworn denial of the existence of a conspiracy, it is encumbent upon the plaintiff to produce significant probative evidence demonstrating that a genuine issue of fact exists as to this element of the complaint." *Pan-Islamic Trade Corp. v. Exxon Corp., supra,* 632 F.2d at 554 (Citing additional Fifth Circuit authority; Court upholding grant of summary judgment as to presence of conspiracy and conscious parallelism). Generally, summary judgment is not favored in antitrust cases. *See Solomon v. Houston*

---

7. "[C]omplaints about price-cutters are 'natural —and from the manufacturer's perspective, unavoidable—reactions by distributors to the activities of their rivals.' Such complaints, particularly where the manufacturer has imposed a costly set of nonprice restrictions, 'arise in the normal course of business and do not indicate illegal concerted action.' [Citation omitted] Moreover, distributors are an important source of information for manufacturers. In order to assure an efficient distribution system, manufacturers and distributors constantly must coordinate their activities to assure that their product will reach the consumer persuasively and efficiently. To bar a manufacturer from acting solely because the information upon which it acts originated as a price complaint would create an irrational dislocation in the market."

"Thus, something more than evidence of complaints is needed. There must be evidence that tends to exclude the possibility that the manufacturer and nonterminated distributors were acting independently. As Judge Aldisert has written, the antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.' [Citations omitted]" *Monsanto Co. v. Spray-Rite Serv. Co., supra,* 104 S.Ct. at 1470–71.

*Corrugated Box Co., supra,* 526 F.2d at 393. However, a mere allegation of conspiracy to restrain trade and resulting damages will not withstand summary judgment once sworn testimony is placed in the record to rebut those allegations. *See In re Municipal Bond Reporting Antitrust Litigation,* 672 F.2d 436, 440 (5th Cir.1982) (Court affirming grant of summary judgment in favor of defendant).

■ Proof on a motion for summary judgment that there was a valid business reason to terminate a dealer will shift the burden of proof to the plaintiff to produce "significant probative evidence" that the antitrust violation was the real purpose, or at least a substantial contributing purpose, of the termination. *See Joe Regueira, Inc. v. Am. Distilling Co., supra,* 642 F.2d at 832 (Court affirming grant of summary judgment to defendant on plaintiff's claims that its termination as dealer violated contractual and federal antitrust laws). *See also Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.,* 769 F.2d 919 (2d Cir.1985) (Distributor termination; Court affirming summary judgment in favor of defendant on antitrust claims).

The Courts have defined what are valid business reasons tending to support a finding of lawful dealer termination. *See, e.g., Monsanto Co. v. Spray-Rite Serv. Co., supra,* 104 S.Ct. at 1470; *Joe Regueira, Inc. v. Am. Distilling Co., supra,* 642 F.2d at 828–32 & n. 13; *Oreck Corp. v. Whirlpool Corp.,* 579 F.2d 126, 128, 132 & n. 7 (2d Cir.), *cert. denied,* 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978). Under *Joe Regueira,* such valid business reasons may involve a dealer's poor sales performance, if adequately proven, or a dealer's bad record of paying its debts to a manufacturer. According to *Monsanto,* a manufacturer may also validly insure that its distributors earn sufficient profit to pay for programs such as hiring and training salesmen for demonstrating the technical features of a product. In *Oreck,* the Court ruled that a distributor's disregard for terms of a contract, including its refusal to modify advertising campaigns in accordance with a

manufacturer's wishes and its failure to abide by the manufacturer's marketing strategy, may also demonstrate the manufacturer's independent and permissible action in terminating the dealer. The *Oreck* Court also noted the lack of renewal provisions in the dealer's contract.

■ In this case, the defendants have demonstrated to the Court's satisfaction valid business reasons for terminating the plaintiff, stemming from plaintiff's unauthorized sale of a highly technical piece of equipment. Requiring training of dealer personnel and a special sales program were valid concerns of the manufacturer, imposed upon its dealers as a whole. The contract itself also provided for termination without cause. This showing shifted the burden to the plaintiff to create, at a minimum, an issue of fact as to whether there was a conspiracy or scheme with an unlawful purpose. Thus, the Court concludes that there is no genuine issue of material fact regarding the existence of a conspiracy to restrain trade, rendering appropriate summary judgment dismissing plaintiff's federal antitrust claims. The same standards require summary dismissal of the state claims. *See Red Diamond Supply, Inc. v. Liquid Carbonic Corp.,* 637 F.2d 1001, 1003 (5th Cir.), *cert. denied* 454 U.S. 827, 102 S.Ct. 119, 70 L.Ed.2d 102 (1981).

■ Summary judgment is further supported by plaintiff's failure to allege or create a genuine issue of material fact that defendants' actions brought about any public injury. *See Monsanto Co. v. Spray-Rite Serv. Co., supra,* 104 S.Ct. at 1470. There has been no showing that any alleged nonprice vertical restraints had or were likely to have a "pernicious effect" on competition. *See Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 58–59, 97 S.Ct. 2549, 2561, 53 L.Ed.2d 568 (1977). Plaintiff's allegations in this case, at best, place intrabrand competition at issue. However, it is interbrand competition that is "the primary concern of antitrust law," *Continental T.V., Inc. v. GTE Sylvania, Inc., supra,* 97 S.Ct. at 2558 n. 19, and even if any alleged restrictions would presum-

ably reduce intrabrand competition, this does not establish injury to competition. *See Red Diamond Supply, Inc. v. Liquid Carbonic Corp., supra,* 637 F.2d at 1005.

Accordingly, defendants' motions for summary judgment are GRANTED, dismissing plaintiff's complaint, as amended, and the Clerk of Court is hereby ordered to enter final judgment dismissing the suit with prejudice, each party to bear its own costs.