Bruce RODRIGUE and Rodrigue
Dodge, Inc.

v.

CHRYSLER CORPORATION et al.

Civ. A. No. 74–2652.

United States District Court,
E. D. Louisiana.

Oct. 15, 1976.

Donald A. Hammett and Dominic J. Gianna, Hammett, Leake, Hammett, Hulse & Nelson, New Orleans, La., for plaintiffs.

James K. Irvin, Milling, Benson, Woodward, Hillyer & Pierson, New Orleans, La., for defendant.

JACK M. GORDON, District Judge.

This matter is before the Court on the motion of the plaintiffs to file an amended complaint and the motion of defendant Chrysler Motors Corp. for partial summary judgment.

Plaintiffs, a former Dodge dealership corporation, and its individual owner, have sued Chrysler Motors Corp. (CMC) claiming CMC breached the Direct Dealer Agreement in effect between CMC and Rodrigue Dodge. It is further charged that CMC's action constituted a violation of the Automobile Dealer's Day in Court Act (15 U.S.C. §§ 1221–1225) and the federal antitrust laws. By moving to amend their complaint, plaintiffs seek to allege as an additional antitrust violation that the defendant compelled the plaintiff to purchase equipment and merchandise manufactured by various corporations in order to receive vehicles, parts and accessories ordered by the plaintiffs.

Defendant has opposed the amendment of plaintiffs' complaint and has moved for partial summary judgment in its favor, dismissing both plaintiffs' claims based on alleged antitrust violations and all of Bruce Rodrigue's individual claim based on lack of standing to sue. Defendant contends that:

(1) There is no dispute as to the non-existence of a contract between the plaintiffs and the defendants that constituted a tying arrangement in violation of the Sherman or Clayton Acts.

(2) There is no evidence of any other type of conspiracy in restraint of trade involving the defendant.

(3) The individual plaintiff, Bruce Rodrigue, lacks standing to sue for any of the claims alleged in the complaint.

## MOTION TO AMEND COMPLAINT

Plaintiffs seek to amend their complaint to allege that defendant compelled plaintiff to purchase equipment manufactured by six corporations, in order to receive vehicles and parts from the defendant. Pretermitting any questions as to the timeliness of the amendment and possible prejudice to the defendant (suit was filed nearly two years ago; the case has been pre-tried and a trial date set in February, 1977), the Court is of the opinion that the motion to amend should be denied.

On its face, the amended complaint seeks to allege a tying arrangement with CMC and six other companies (with which the defendant claims no proprietary interest). Section 3 of the Clayton Act (15 U.S.C. § 14) forbids a seller to:

contract for sale of goods . . . on the condition . . . that the . . purchaser thereof shall not use or deal in the goods . . . of a competitor or competitors of the . . . seller . .

■ This statutory prohibition against tying arrangements is geared to prevent a seller of two products from using his dominant market power over the first product to foreclose his competitors from access to buyers of the second product. In order for one to establish an illegal tying agreement, it is necessary to show that the tying arrangement involves a seller who not only competes in the tying item's line of commerce, but also participates for profit in the area of competition to which the tied item belongs. See, Crawford Transportation Co. v. Chrysler Corp., 338 F.2d 934 (6th Cir. 1964), cert. denied 380 U.S. 954, 85 S.Ct. 1088, 13 L.Ed.2d 971 (1965); Nelligan v. Ford Motor Co., 262 F.2d 556 (4th Cir. 1959) and Miller Motors, Inc. v. Ford Motor Co., 252 F.2d 441 (4th Cir. 1958).

Defendant thus contends that the amended complaint fails to state a claim under the antitrust laws in that there is neither an allegation in the amended complaint nor a suggestion in the record that defendant had any interest in the services or materials sold by the six named companies in the amended complaint (other than the companies might stimulate sales or promote operational efficiency in the dealerships that used them).

■ Plaintiffs apparently have no dispute with the law as outlined above. They do, however, request additional discovery in

order to determine the relationship, if any, Chrysler has with the six companies. The Court feels, however, that the plaintiffs are only *hoping* to find a violation by Chrysler. The fact of the matter is that the amended complaint, on its face, is defective. It fails to allege the proper connection between Chrysler and the six "tied" companies.

For these reasons, the motion to amend the complaint is hereby DENIED.

## THE ANTITRUST CLAIMS

### A Conspiracy with Clearview Dodge

Chrysler has also moved to dismiss the plaintiffs' antitrust claims. Initially, plaintiffs contend that the entire course of conduct of Chrysler employees toward Rodrigue Dodge suggests that a conspiracy existed between Chrysler and Clearview Dodge to drive Rodrigue out of business.

In support of this position the plaintiffs cite the following facts which they feel indicate that the antitrust count of the complaint is well founded:

(1) Chrysler Realty owns the land, buildings and facilities of Clearview Dodge, Inc.

(2) Chrysler Corporation owned, at one time, 88½% of the stock in Clearview Dodge.

(3) When Chrysler contemplated the establishment of a Dodge dealership in Norco, Louisiana, Mr. Tracey of Clearview Dodge complained to Chrysler Motors employee Dave Salter.

(4) Mr. Tracey had a subsequent conversation with Salter.

(5) Mr. Tracey discussed the letter with Bob Pope, District Manager for Chrysler Motors Corporation.

(6) Mr. Tracey had conversations with other Dodge dealers concerning the Norco dealership.

(7) In depositions not transcribed as of this date, Clark Rolland, Regional Sales Manager for the Memphis region testified that Ed Newton of the main office in Detroit knew about the Tracey complaints and they had some discussion concerning these complaints.

(8) Another Chrysler employee, Don Aspelund testified in deposition that he had been made aware of these complaints.

(9) Werman Sugg, a Chrysler Motors employee, testified in deposition, that he too was aware of the complaints made by Mr. Tracey.

(10) Clark Rolland himself testified that Mr. Tracey complained about the infringement on his territory.

(11) During and subsequent to this time frame, Rodrigue Dodge came into existence and experienced not only the myriad problems with the District Manager, but was unable to order and receive automobiles ordered for Rodrigue customers. These customers purchased these same vehicles at Clearview Dodge.

(12) Automobiles ordered by Rodrigue were diverted to Clearview Dodge.

It is argued that the above facts "suggest" a conspiracy to drive Rodrigue out of business. (It should be noted that in September, 1972, Hugh Tracey bought the Clearview dealership from Chrysler. Although some of the real estate on which Clearview is located is still owned by Chrysler Realty Corp., Chrysler's proprietary interest in Clearview Dodge is of doubtful relevance in that it was terminated nearly two years before Rodrigue went into business.)

The factual underpinnings of plaintiffs' alleged conspiracy are totally lacking. There is no dispute that Tracey, as owner of Clearview Dodge, made complaints to Chrysler relative to the installation of a new dealership in Norco (Rodrigue's). Tracey, understandably, was concerned over the possible loss of business to the new dealership. However, the mere complaints do not create an antitrust claim. In fact, Tracey's complaints fell upon deaf ears. Rodrigue's dealership was franchised by Chrysler despite the complaints of Tracey. The plaintiffs would have the Court

believe the incongruous proposition that Chrysler would, on the one hand, conspire to put Rodrigue out of business, yet, on the other hand, grant him a dealership. Indeed, if there was a conspiracy to favor Clearview, Chrysler would never have given Rodrigue his dealership in the first place. Plaintiffs' contention that, because of continued complaints by Tracey after Rodrigue Dodge was formed, Chrysler had "second thoughts" about the Rodrigue dealership (and, therefore, tried to put him out of business) is totally without factual support. The only possible inference of conspiracy would exist in the fact that several automobiles ordered by Rodrigue were diverted to Clearview Dodge. However, it is undisputed that Rodrigue Dodge was on "finance hold" for a period of several months. This occurs when a dealer cannot pay for vehicles through its wholesale financing source, and when it did order some vehicles the drafts on them are dishonored. At such a time, an ordered vehicle that has been placed in the production-shipping process must be diverted to another buyer, most conveniently in the same area.

■ In summary, the Court concludes that the inferences which the plaintiff wishes the Court to make are insufficient to defeat a motion for summary judgment. This is particularly so in view of the recent case of *Solomon v. Houston Corrugated Box Co.*, 526 F.2d 389 (5th Cir. 1976). Here the Court held that summary judgment is appropriate in antitrust cases where the plaintiff can offer only vague and conclusory charges:

We are fully cognizant that summary judgment is drastic relief which must be applied with caution and that the pleadings of the party opposing it are to be liberally construed, e. g., *Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230, 234 (10th Cir. 1975). Summary judgment is not generally favored in antitrust cases, see, e. g., *Clark v. United Bank*, 480 F.2d 235, 240 (10th Cir.), cert. denied, 414 U.S. 1004, 94 S.Ct. 360, 38 L.Ed.2d 240 (1973); *Williams v. Pennsylvania Co.*, 367 F.Supp. 1158, 1167 (E.D.Pa.1973). It is appropriate, however, when "it is plain that the

allegedly unlawful practice does not exist, and that plaintiff's claim is without merit," *Capital Temporaries, Inc. v. Olsten Corp.*, 365 F.Supp. 888, 895 (D.Conn. 1973), aff'd, 506 F.2d 658 (2d Cir. 1974). The mere allegation of the Sherman Act claim requirements of a contract, combination, or conspiracy for the purpose of restraining trade or interstate commerce and resulting damages is not sufficient to withstand a motion for summary judgment once they have been rebutted, *ALW, Inc. v. United Air Lines, Inc.*, 510 F.2d 52, 54–57 (9th Cir. 1975); see, e. g., *Kemp Pontiac-Cadillac, Inc. v. Hartford Automobile Dealers' Ass'n.*, 380 F.Supp. 1382, 1389 (D.Conn.1974) ("glib and conclusory allegations" of conspiracy are insufficient to raise genuine issues in face of specific denials in sworn depositions and affidavits by defendants); *Searer v. West Michigan Telecasters, Inc.*, 381 F.Supp. 634, 643 (W.D.Mich.1974) (the policy of sparing use of summary procedures in antitrust cases "is no warrant for every plaintiff who can draft an antitrust complaint, no matter how groundless or improbable its allegations, to force his claim to trial despite its deficient factual underpinnings"); *Murdock v. City of Jacksonville*, 361 F.Supp. 1083, 1086–87 (M.D.Fla.1973) ("Even in an antitrust case a party cannot rest on the allegations contained in his complaint but must, in opposition to a motion for summary judgment, come forward with affidavits setting forth specific facts showing that there is a genuine issue of material fact for trial") (citations omitted).

We have recently had occasion to apply these principles in *Scranton Construction Co. v. Litton Industries Leasing Corp.*, 494 F.2d 778, 782 (5th Cir. 1974), cert. denied, 419 U.S. 1079, 95 S.Ct. 774, 42 L.Ed.2d 800 (1975), wherein we stated:

We have searched the record in vain for evidence supporting plaintiffs' allegations of a combination or conspiracy against them between Litton and anyone in the area of plaintiffs' claims. Proof of this is, of course, essential to plaintiffs' case under § 1 of the Sher-

man Act and to its conspiracy claims under § 2. Facing defendants' sworn challenge to the existence of such a conspiracy, it was up to plaintiffs to produce *significant probative evidence* —by affidavit or deposition—demonstrating that a *genuine* issue of fact existed as to this element of the complaint, if summary judgment was to be avoided. (citations omitted, emphasis added).

Similarly, a review of the record in this case reveals a total lack of any significant probative evidence, by means of sworn affidavits or depositions, supportive of appellant's contention that genuine issues of material fact exist.

For the aforementioned reasons, defendant's motion for summary judgment on the antitrust claims is hereby GRANTED.

### STANDING

Defendant contests Bruce Rodrigue's individual standing to sue for both antitrust and Dealer Day in Court claims against Chrysler. Since the Court has dismissed the antitrust claims there is no need to decide standing on that particular issue.

In determining whether Rodrigue has standing to sue individually for alleged contractual breaches under the Automobile Dealers Day in Court Act (15 U.S.C. §§ 1221–1225, it is important to note that 15 U.S.C. § 1222 provides in part:

An automobile dealer may bring suit against any automobile manufacturer engaged in commerce . . . by reason of the failure of said automobile manufacturer from . . . performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer . . . .

In interpreting whether an *individual* had standing to sue under the Dealer Act, the Fifth Circuit, in a similar suit, held as follows in *York Chrysler-Plymouth, Inc. v. Chrysler Credit Corp.*, 447 F.2d 786 (5th Cir. 1971):

Although not signing parties to the franchise agreement, C. C. York and Jer-

ry A. York were so inextricably woven into it that we believe they could assert a claim against Chrysler Motors under the Dealers Day in Court Act. Section 1221(c) defines a dealer as any person or corporation "operating under the terms of a franchise." The individuals would not come within the scope of the Act merely because they were sole stockholders, officers and directors of the corporate franchise holder. *Schaffer v. Universal Rundel Corp.*, 397 F.2d 893 (5th Cir. 1968); *Martens v. Barrett*, 245 F.2d 844 (5th Cir. 1957). However, following the reasoning in *Kavanaugh v. Ford Motor Company*, 353 F.2d 710 (7th Cir. 1965), we believe that the Yorks were made essential to operation of the dealership by the agreement with Chrysler Motors. The Direct Dealer Agreement held by the Yorks at the old location recited that Chrysler Motors Corporation "has entered into this agreement relying on the active, substantial and continuing personal participation" of C. C. York and Jerry A. York, required them to maintain beneficial ownership and control of the stock in the dealership corporation, could be terminated if either of them died or failed to continue in the active management of the dealership or was convicted of certain crimes, and could even be terminated if Chrysler Motors thought that a disagreement between them might adversely affect the business.

It is significant that *York* purportedly followed the reasoning in *Kavanaugh v. Ford Motor Co.*, 353 F.2d 710 (7th Cir. 1965). However, the thrust of the *Kavanaugh* decision revolved around a dealership agreement between Ford and the corporate dealer that referred to and depended upon a management agreement between Ford and Kavanaugh in his individual capacity. Moreover, in *Kavanaugh*, Ford retained a controlling stock interest in the dealership corporation so, as a practical matter, *the individual was the only person or entity that could have sued Ford* under the Dealer Act. For some reason, the Court, in *York*, failed to recognize that critical factual difference with *Kavanaugh*.

The facts of the instant case are distinguishable from the factual underpinnings of the *York-Kavanaugh* decisions. Here, Rodrigue is not the only person who can sue under the Dealer Act. Rodrigue Dodge is still viable and can (and in fact, did) sue Chrysler under the Dealer Act. Bruce Rodrigue, as an individual, is claiming no damages except those derivative of his corporation.

Such a factual situation requires denial of individual standing to sue under the Act. The Court in *Vincel v. White Motor Corp.*, 521 F.2d 1113 (2d Cir. 1975) distinguished *Kavanaugh* on the ground that nothing precluded Vincel's corporation from pursuing the Dealer Act claims. The Court, in denying individual standing, held:

> When, as here, a dealership is doing business in corporate form, the statute contains no hint that it intends a departure from the established principle that the locus of the right of action is the corporation.

Similarly, this Court finds that Rodrigue has no standing to sue in an individual capacity.

Accordingly, IT IS ORDERED that defendant's motion to dismiss the claims of the individual plaintiff, Bruce Rodrigue be GRANTED.