Robert W. JOHNSON, et al.,
Plaintiffs-Appellees,

v.

NATIONWIDE INDUSTRIES, INC., et al., Defendants-Appellants.

No. 81–1347.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 1981.

Decided Aug. 29, 1983.

Robert W. Berliner, Jr., Levy & Erens, Sheldon O. Collen, Friedman & Koven, Chicago, Ill., for defendants-appellants.

Thomas H. Fegan, Johnson, Cusack & Bell, Ltd., Chicago, Ill., for plaintiffs-appellees.

Before BAUER, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and BROWN, Senior District Judge.[*]

FAIRCHILD, Senior Circuit Judge.

This is an appeal from denial of defendants' motions to dismiss or for summary judgment.[1]

Each of the two plaintiffs (suing also as class representatives) purchased and owns one unit of a high-rise condominium on Chicago's lakefront. It contains 940 units. They complain that defendants, some of whom were involved in the conversion of a rental building into this condominium in 1973 and some in later sales,[2] violated § 1 of the Sherman Act by tying a building management contract to the sale of the units.[3] Defendants contend that the sale of a unit subject to a proportionate obligation under a pre-existing management contract is a sale of a single product.

On August 23, 1973, a trustee executed a declaration of condominium ownership for the building in question. Shortly thereaft-

---

[*] Senior District Judge Wesley E. Brown of the District of Kansas sitting by designation.

1. Leave was given for an interlocutory appeal. 28 U.S.C. § 1292(b).

2. The district court recognized three groups of defendants: (1) developer defendants who developed the building and converted it from a rental property into a condominium; (2) the three Invsco defendants, two of which succeeded the developer defendants as the title holders of the unsold residential units and one of which is the assignee of a contract to manage the condominium; and (3) garage lessee defendants. The district court dismissed the claims against the garage lessee defendants. *See Johnson v. Nationwide Industries, Inc.*, 450 F.Supp. 948 (N.D.Ill.1978).

3. In Illinois a condominium unit purchaser buys: (1) a fee simple estate in his apartment unit; and (2) a tenancy in common (a fractional undivided interest) in the shared areas such as the ground, outside hallways, elevator, roof, etc. Ill.Rev.Stat. ch. 30, §§ 304, 306. The Illinois Condominium Property Act, Ill.Rev.Stat. ch. 30, §§ 301–31, has been amended several times since the declaration of condominium ownership and the contracting for management services in 1973. None of the changes affect the issue before us. We note, however, that an amendment to Ill.Rev.Stat. ch. 30, § 318.2, effective January 1, 1978, if applicable, would have provided an opportunity to cancel the contract in question or any developer negotiated contract which attempted to bind the unit owners' association for a period of more than two years from the recording of the declaration. 1977 Ill.Rev.Laws 80–1118.

Numerous states have chosen to limit the term of management contracts to which a developer may bind the purchasers of condominium units. *See Krebs, The Legislative Response to "Sweetheart" Management Contracts: Protecting the Condominium Purchaser*, 55 Chi-Kent L.Rev. 319, 324 (1979).

er, the developer defendants contracted with one of their number, Moss Financial Corporation, for the management of the condominium's common elements. By its terms, the contract was to extend until five years after the date by which 80% of the units had been sold by the developer. About two and one-half years after the conversion to a condominium, the developer defendants sold the last 430 unpurchased residential units and all of the commercial properties except the garage to the Invsco defendants and assigned the management contract to American Invsco Management, Inc., one of the Invsco defendants. The condominium's developer-controlled board of directors [4] (Johnson Dep. 109–14, 214–18) approved the assignment and agreed with the assignee to interpret the contract so that it would extend for the five years beginning January 1, 1976 and ending December 31, 1980. After December 31, 1980, American Invsco Management, Inc., ceased managing the condominium's common areas.

In denying defendants' motions for summary judgment, the district court rejected defendants' argument that there could be no tying arrangement because only a single product was sold. Noting that "a tying arrangement may avoid per se unreasonable status if it is shown to be reasonable and justifiable as a business necessity," the court concluded that the reasonableness of the management contract purchased from defendants is a factual issue.

■ A tying arrangement conditions the sale of a tying product upon the buyer's purchase of a distinct tied product. *Northern Pacific Railway v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). Courts associate tying with the exclusion of competitors from the market in the tied product and the restraint of buyers' independent judgment, both of which the courts perceive as fundamental economic evils. Therefore they have condemned such arrangements. *Id.* at 6, 78 S.Ct. at 518. In rejecting tying arrangements, courts often refer to tying by a party with "sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product," as a *per se* antitrust violation whenever "a 'not insubstantial' amount of interstate commerce is affected." *Id.*

The Illinois Condominium Property Act obligates each unit owner to pay his proportionate share of the common expenses. Ill. Rev.Stat. ch. 30, § 309. We have no doubt that such expenses include charges under management contracts executed by the developer, initially, or, later, by the board of managers pursuant to §§ 318.2 to 318.4. The unit owner's obligation with respect to the common elements is inseparable from the ownership of his unit, and the sale by a developer to a unit owner is *prima facie* a sale of one property interest (the unit and appertaining percentage of ownership in the common elements) and not two (the unit and share of common elements plus a share of a management contract). The choice of whether and with whom to contract for management belongs to the unit owners' association, once it assumes control from the developer, and not to unit owners individually.

Defendants would have us focus on the sale of the unit, treating the management contract as "pre-existing." Where, however, the same person or group has both created the management contract and made the sale of a unit, we think the antitrust analysis must focus on the creation of the contract and the sale as if they were one transaction. Thus the original developer is not saved from a claim of antitrust violation by the fact that if one looked at the sale separately, no more than one product would be involved.

The substance of the matter would be different as to a group of units purchased at arm's length by another, subject to the management contract. Such purchasers would bear no responsibility for the pre-existing unity of the contract and the proper-

---

**4.** This characterization of the board of directors accords with the most favorable inference attributable to the deposition testimony of the plaintiffs, the party opposing summary judgment. We do not preclude the finding of a contrary fact upon remand.

ty. Therefore in selling to unit owners they would be selling only one product in substance as well as form. Plaintiff Johnson purchased his unit from one of the developer defendants, and plaintiff Hansen claims to have purchased later from one of the Invsco groups. It is conceivable that their cases may have different results on this account. The Invsco defendants have not, up to now, claimed any difference in position on this basis, and there may be facts as to their relationship which would defeat any such claim if made.

It seems clear to us that in development and sale of a large condominium there is great advantage, perhaps necessity, in the existence of a management contract of substantial duration during the period of sale. The sale process may continue over a substantial period. Prospective purchasers will be highly interested in the identity and reputation of the manager, as well as the tenure and expense of the arrangement. Stability in management is essential to unit owners, and delay in an independent choice until there are enough unit owners to act collectively seems inevitable.

Affidavits submitted to the district court to support a request for reconsideration assert that it is the practice of the condominium industry in the Chicago area to contract for professional management services prior to unit sales and for a period thereafter. Prospective purchasers are reluctant to purchase in a building not professionally managed, and proper management helps protect the developer against loss in value of unsold units. Lenders generally require such contractual arrangements, and virtually all the large condominium buildings in the Chicago area have such contracts during and after the period of sales by the developer.

The decision dealing most directly with sale of condominium units subject to a management contract is *Foster v. West Alexandria Properties, Inc.,* 1980–1 CCH Trade Cases ¶ 63,223 (E.D.Va.1980). There the court held that only one product was sold. It determined that it is neither possible nor practical for a unit and management services to be sold individually in a condominium with 800 units; that there was no evidence of hindrance in the market for condo-

miniums or purchasers or diminution of the number of management service companies; and that it is the universal practice of the industry in the area to contract for the services of a professional management corporation. The court did emphasize the reasonableness of the provisions involved, which permitted earlier termination of the contract than in the present case. The unit owners' association was permitted to choose a manager once unit owners held 75% of the units, and only eleven months needed to elapse before the decision could become effective. The court found this arrangement manifestly not unreasonable. The court noted that in *Jones v. 247 East Chestnut Properties,* 1975–2 CCH Trade Cases ¶ 60,-491 (N.D.Ill.1974) unit owners were required to maintain the same management company for five years after the sale of the last unit, and found *Jones* factually distinguishable on that basis.

Thus the *Foster* court appears to have considered the reasonableness of the duration of the management contract in deciding that the sale of the unit subject to such contract was the sale of only one product.

In *Jones, supra,* the court held that the management services and condominium units were separate products, but could not determine from the showing on the motion for summary judgment whether the duration of the management contract was reasonable. The court noted "the feasibility at some point of a collective choice by the owners with respect to the management of the building." The *Jones* court cited *United States v. Jerrold Electronics Corp.,* 187 F.Supp. 545 (E.D.Pa.1960), *aff'd per curiam,* 365 U.S. 567, 81 S.Ct. 755, 5 L.Ed.2d 806 (1961). *Jerrold* had held that defendant's insistence upon a buyer of its antenna system taking its service contract was a tie of two products, but reasonable and not in violation of § 1 of the Sherman Act under the circumstances at initial stages of the business. 187 F.Supp. at 557.

Thus the *Jerrold* court considered reasonableness as a justification for tying two products, and the *Jones* court followed the

same analysis.[5] An Illinois Appellate Court followed *Jones* in a state antitrust case involving the same condominium. *Luster v. Jones,* 70 Ill.App.3d 1019, 27 Ill.Dec. 66, 388 N.E.2d 1029 (1st Dist.1979).

Professor Areeda has commented:

*Jerrold* is a frank recognition of the room for exceptions to an apparently applicable per se condemnation. It makes clear that so-called per se rules are simply examples of the presumptions that exist throughout antitrust law. Of course, presumptions come in various breadths and strengths, and so do per se rules, as we shall see.

. . . .

The court faced with an alleged tie-in that is said to be unlawful per se must, if there be any doubt about it, ask whether the challenged conduct ought to be condemned. That is, the court must decide whether the reasons for relatively categorical historical condemnation of tie-ins apply to the situation before it. If the answer is negative, the court may hold that the challenged conduct does not constitute a tie-in at all. Thus, a package transaction with substantial justifications or with few apparent harmful effects may be said not to be a "tie-in." [Citing in footnote *Principe v. McDonald's Corp.,* 631 F.2d 303 (4th Cir.1980), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981).] Of course, it might be cleaner and clearer to say that harmful effects are a prerequisite for illegality or that justified tie-ins are lawful, but the immediate point is that courts achieve the same end by varying the definition of a per se classification.

P. Areeda, The "Rule of Reason" in Antitrust Analysis: General Issues (Federal Judicial Center 1981), pp. 30, 31, 32.

One may wonder whether it makes much difference, except for allocating the burden of producing evidence, whether, in the situation here, a court requires a finding of unreasonable duration of the management contract before deciding that two products are tied, or first finds that two products are tied, but that the arrangement is lawful if the duration of the management contract is reasonable. In either approach there would be a finding as to whether the duration of the management contract was excessive and that is the factor which would foreclose competition.

Because practical considerations require that almost every sale of a condominium unit in a large condominium be subject to a management contract and because we ought not presume that most such contracts are of unreasonable duration, plaintiffs ought bear the burden of producing evidence that the duration of a particular management contract is unreasonable. Therefore we prefer the *Foster* approach and are satisfied that only one product is involved in the sale of a condominium unit subject to a management contract of reasonable duration.

Oddly enough all parties seem to take the position that the duration of the management contract in this case is irrelevant. We nevertheless conclude that the reasonableness of its duration is the critical issue and affirm the denial of summary judgment on that basis.

The order appealed from is AFFIRMED.

---

5. *Fortner Enterprises, Inc. v. United States Steel Corp.,* 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969), implicitly distinguished the separability issue from the business justification defense. *Compare:* "Whatever the standards for determining exactly when a transaction involves only a 'single product,' we cannot see how an arrangement such as that present in this case could ever be said to involve only a single product," 394 U.S. at 507, 89 S.Ct. at 1261, *with* "It may turn out that the arrangement involved here serves legitimate purposes." 394 U.S. at 506, 89 S.Ct. at 1260.