## CARL SANDBURG VILLAGE CONDOMINIUM ASSOCIATION NO. 1, et al., Plaintiffs-Appellants,

v.

## FIRST CONDOMINIUM DEVELOPMENT CO., et al., Defendants-Appellees.

### No. 84–1558.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 15, 1984.

Decided March 27, 1985.

---

Reuben L. Hedlund, Latham & Watkins, Chicago, Ill., for plaintiffs-appellants.

Richard J. Gray, Jenner & Block, Arlene C. Erlebacher, Sidley & Austin, Chicago, Ill., for defendants-appellees.

Before FLAUM, Circuit Judge, PELL, Senior Circuit Judge and EVANS, District Judge.*

FLAUM, Circuit Judge.

This case presents the issue of whether a condominium developer's sale of condominium units subject to two-year management contracts with an unaffiliated company constitutes an unlawful tie-in pursuant to section one of the Sherman Act. The district court dismissed with prejudice the plaintiff condominium associations' Sherman Act count for failure to state a claim. The court also dismissed the plaintiffs' remaining counts, brought under state law theories, without prejudice for want of subject matter jurisdiction. On appeal, we affirm the decision of the district court.

* The Honorable Terence T. Evans, District Judge for the Eastern District of Wisconsin, is sitting by designation.

## I.

In early 1979, the defendants First Condominium Development Company and Eagle II (the "Condominium Developers") purchased and converted Carl Sandburg Village from rental apartments to condominium units. The Condominium Developers proceeded to market and sell condominium units in four of the buildings of Carl Sandburg Village to individual members of the plaintiff class. When the buildings were converted, about eighty percent of the tenants in the buildings purchased their respective units.

During the conversion process, the Condominium Developers established the plaintiff Carl Sandburg Village Condominium Associations Numbers 1 and 2 (the "Condominium Associations") in order to manage and maintain the property's common elements. On July 13, 1979, the Condominium Associations, under the direction of the Condominium Developers, consented to be parties to condominium management agreements with co-defendant Arthur Rubloff and Company ("Rubloff"). Rubloff had been managing the buildings since 1965 when they were first built. The individual unit owners of the Condominium Associations were indirectly subject to the condominium management agreements with Rubloff by virtue of their status as members of the Condominium Associations. The management agreements appointed Rubloff as the managing agent for two years and gave the Condominium Associations the right to terminate the management agreements upon thirty days' notice if Rubloff did not meet its obligations under the agreements. As compensation for these services, Rubloff was to receive a fee computed and payable monthly in the amount of $5.25 per occupied condominium unit.

On September 16, 1982, the Condominium Associations and their individual members sued the Condominium Developers,

Rubloff, and Rubloff's resident manager in a nine-count complaint, seeking treble damages of over $15 million and such other relief as the court deemed proper. In Count I, the plaintiffs alleged that the defendants agreed and conspired to tie the sale of Rubloff management services to the sale of condominium units at Carl Sandburg Village in violation of section 1 of the Sherman Act. 15 U.S.C. § 1 (1982). The plaintiffs alleged that the conspiracy to tie management services to condominium units had the effect of reducing competition, causing plaintiffs to incur excessive fees, and perpetuating Rubloff's control of management services for an unreasonable period of time. This tie-in purportedly precluded the plaintiffs from selecting an independent management service at a lower cost. The plaintiffs also alleged various state claims in counts II through IX for violation of the Illinois Antitrust Act by virtue of the tie-in, for breach of fiduciary duty in failing to disclose defects in the buildings, for negligent misrepresentation, for violation of the Chicago Municipal Code and Illinois Consumer Fraud and Deceptive Practices Act, for negligent construction, for breach of contract, and for breach of express and implied warranties of workmanship.

■ In dismissing plaintiffs' count I tying claim with prejudice, the district court found that the Condominium Developers as sellers of the tying product (condominium units) did not have a sufficient economic interest in the sale of the tied product (management services) to support a tying claim. *Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Co.*, 586 F.Supp. 155, 160 (N.D.Ill.1983). The court reasoned that although the defendants may have schemed to conceal faults from potential purchasers of condominium units, they had not used their market power to alter the competitive structure of the market for management services or to squeeze a profit out of a second market. *Id.* at 157–59. The court then dismissed the plaintiffs' remaining state law claims for want of subject matter jurisdiction because the plaintiffs' only federal count was dismissed before trial. *Id.* at 160.[1] On plaintiffs' motion to reconsider, the district court held that the plaintiffs had also failed to state a claim under the rule of reason. *Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Co.*, 586 F.Supp. 155, 160, 161–62 (N.D.Ill.1984).

On appeal, the plaintiffs claim that the district court assumed the resolution of factual issues and erroneously dismissed plaintiffs' tie-in claim and that the court erroneously ruled on the pleadings that there was no rule of reason violation alleged by the plaintiffs. We will address each of these claims in turn below.[2]

1. We note that the Condominium Associations argue that the district court erred in failing to grant them leave to amend their antitrust count. However, the plaintiffs never sought leave to amend their complaint and do not indicate how they would amend their complaint to allege the economic interest element if granted leave. According to rule 15(a) of the Federal Rules of Civil Procedure, a party may amend his pleading after a responsive pleading is served only by leave of court or by written consent of the adverse party. Such leave to amend should be freely given when justice so requires. Fed.R. Civ.P. 15(a). We hold that the district court did not abuse its discretion in denying leave to amend because such leave was never requested. *See Coates v. Illinois State Bd. of Educ.*, 559 F.2d 445, 451 (7th Cir.1977).

2. The Condominium Developers also argued in their motion to dismiss that the condominium units and the management services were a single product, so that the Condominium Associations had not alleged the existence of a tying arrangement between two distinct products. Since it found that the plaintiffs had not alleged the requisite economic interest element, the district court did not address the issue of separate products. Because we affirm on economic interest grounds, we similarly decline to discuss the separate products issue. We note, however, that this circuit has held that only one product is involved in the sale of condominium units subject to a management contract of reasonable duration. *Johnson v. Nationwide Industries, Inc.*, 715 F.2d 1233, 1237 (7th Cir.1983). *But cf. Jack Walters & Sons Corp. v. Morton Building, Inc.*, 737 F.2d 698, 703 (7th Cir.1984) (dictum) (Supreme Court's holding in *Jefferson Parish* that products are separate for tie-in purposes if there are separate markets for each product could be thought to place decision in *Johnson* under a cloud since there are separate markets

## II.

### A. Dismissal for Want of Economic Interest in the Alleged Tying Arrangement

Following the filing of the complaint by the Condominium Associations, the Condominium Developers and Rubloff filed a motion to dismiss or for summary judgment. The district court held the defendants' motion for summary judgment in abeyance and issued its opinion dealing with the motion to dismiss. We are asked to decide whether it was proper for the district court to dismiss the Condominium Associations' complaint for failure to state a claim.

According to rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may make a motion to dismiss asserting a failure by the plaintiff to state a claim upon which relief can be granted. In interpreting this rule, the Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Kurek v. Pleasure Driveway and Park District,* 557 F.2d 580, 586 (7th Cir.1977), *vacated and remanded on other grounds,* 435 U.S. 992, 98 S.Ct. 1642, 56 L.Ed.2d 81 (1978), *reinstated,* 583 F.2d 378 (7th Cir.1978), *cert. denied,* 439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1979). The Supreme Court has also held that a court should grant motions to dismiss in the antitrust context very sparingly since proof of the conspiracy may be in the hands of the alleged conspirators. *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). Although we have recognized the Supreme Court's "exceedingly forgiving attitude" toward pleading deficiencies, we have also held that this lenient attitude has never been taken literally. *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984); *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984). This circuit has held that a complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Sutliff v. Donovan,* 727 F.2d at 654 (quoting *In Re Plywood Antitrust Litigation,* 655 F.2d 627, 641 (5th Cir.1981), *cert. dismissed,* 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983)). In view of the potential expense of an antitrust suit and the increasingly heavy federal caseload, we have concluded that the parties should not be forced to commence pretrial discovery and that a court can properly grant a motion to dismiss on the pleadings if there is no reasonable prospect that the plaintiff can make out a cause of action from the events related in the complaint. *Car Carriers v. Ford Motor,* 745 F.2d at 1106; *Sutliff v. Donovan,* 727 F.2d at 654.

■ The Supreme Court has defined a tying arrangement as an agreement by one party to sell a product (the tying product) to another on the condition that the buyer also purchase a different product (the tied product). *Northern Pacific Railway Co. v. United States,* 356 U.S. 1, 5–6, 78 S.Ct. 514, 518–519, 2 L.Ed.2d 545 (1958). In order to establish the *per se* illegality of a tying arrangement, a plaintiff must show that: (1) the tying arrangement is between two distinct products or services, (2) the defendant has sufficient economic power in the tying market to appreciably restrain free competition in the market for the tied product, and (3) a not insubstantial amount of interstate commerce is affected. *Id.; Moore v. Matthews & Co.,* 550 F.2d 1207, 1212 (9th Cir.1977). In addition, this circuit has held that an illegal tying arrangement will not be found where the alleged tying company has absolutely no economic interest in the sales of the tied seller, whose products are favored by the tie-in. *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.,* 585 F.2d 821, 835 (7th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979); *Warner Management Consultants, Inc. v. Data General Corp.,*

for condominiums and for real estate management services).

545 F.Supp. 956, 967 (N.D.Ill.1982). The courts have imposed this economic interest requirement because when the seller of the tying goods has no interest in the sale of the tied product, he is not using his power in the tying product market to invade a second market. *Warner Management v. Data General*, 545 F.Supp. at 967. This economic interest requirement has also been imposed by courts in the Second, Third, Fourth, Fifth, Sixth, Ninth, and Eleventh Circuits. *See, e.g., Esposito v. Mister Softee, Inc.*, 1980–1 Trade Cas. (CCH) ¶ 63,089, at 77,423–24 (E.D.N.Y. Dec. 14, 1979), *cert. denied,* —— U.S. ——, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984); *Venzie Corp. v. United States Mineral Products Co., Inc.*, 521 F.2d 1309, 1317 (3d Cir.1975); *Miller Motors, Inc. v. Ford Motor Co.*, 252 F.2d 441, 446–47 (4th Cir.1958); *Keener v. Sizzler Family Steak Houses*, 597 F.2d 453, 456 (5th Cir.1979); *Crawford Transport Co. v. Chrysler Corp.*, 338 F.2d 934, 939 (6th Cir.1964), *cert. denied*, 380 U.S. 954, 85 S.Ct. 1088, 13 L.Ed.2d 971 (1965); *Roberts v. Elaine Powers Figure Salons, Inc.*, 708 F.2d 1476, 1478–81 (9th Cir.1983); *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 712 (11th Cir.1984).

■ In the usual tying arrangement, it is not difficult to establish the economic interest element because the seller of the tying product is also the seller of the tied product. *Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Systems, Inc.*, 732 F.2d 1403, 1407 (9th Cir.1984). However, courts have held that the tying seller's economic interest does not have to be so direct as long as the tying seller has some form of economic interest in the sale of the tied product, such as the receipt of a com-

mission or rebate. *See, e.g., id.* at 1407–08; *Roberts v. Elaine Powers*, 708 F.2d at 1480–81. Furthermore, the economic interest requirement is not met where a plaintiff merely alleges that the tying seller is receiving substantial revenue as a result of his sale of two products as a package. *Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Systems, Inc.*, 491 F.Supp. 1199, 1209 (D.Hawaii 1980), *aff'd*, 732 F.2d 1403 (9th Cir.1984). Thus, plaintiff does not establish the requisite economic interest in the tied product market merely by alleging that the tying seller is receiving a profit from the transaction as a whole. *Id.*

■ In the present case, the district court held that the Condominium Associations had not alleged the requisite economic interest on the part of the tying sellers of condominium units in the management services (tied product) market. The district court noted that the case law clearly differentiates between cases where the tying and tied product are sold by the same seller and cases where the tying and tied products are sold by different, unaffiliated sellers.[3] In the latter case, the district court held that a plaintiff would have to allege that the seller of the tying product received a commission or rebate in order to establish a claim of illegal tying. The court concluded that the economic interest requirement had not been met in this case because the Condominium Associations had failed to allege that the Condominium Developers (tying sellers) had participated in the profits of Rubloff (tied seller) or in the market for management services. We agree with the district court's conclusion that the Condominium Associations have failed to state a claim of *per se* illegal tying.

**3.** In its first opinion of July 22, 1983, the district court noted that although the plaintiffs had drafted their complaint in a manner emphasizing a connection between Rubloff and the original developers of Carl Sandburg Village, the plaintiffs did not argue in their brief against the defendants' motion for dismissal that the tying and tied products should be deemed to be sold by affiliated entities. *Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Co.*, 586 F.Supp. 155, 157 n. 4 (N.D.Ill.1983). On plaintiffs' motion to

reconsider, the district court rejected the plaintiffs' belated argument made for the first time in a memo dated September 29, 1983, that the requisite economic interest could be found in an affiliation between the Condominium Developers and the Rubloff defendants. *Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Co.*, 586 F.Supp. 155, 160, 160 (N.D.Ill.1984). The district court concluded that the plaintiffs' allegations did not support any inference that the two sets of defendants were business affiliates.

In their complaint, the Condominium Associations alleged that Rubloff (tied seller) conferred an economic benefit upon the Condominium Developers (tying sellers) by concealing defects in the condominium development, thereby permitting the Condominium Developers to sell condominium units quickly at inflated prices without having to make the necessary repairs. The Condominium Associations claimed that this concealment of defects, which resulted in economic benefit to the Condominium Developers, could be analogized to a kickback, rebate, or commission. We reject this analogy because a tying seller's increased sales and efficiency as a result of selling two products as a package do not show the tying seller's economic interest in the tied product market. For example, in *Rodrigue v. Chrysler Corp.*, 421 F.Supp. 903 (E.D.La.1976), the district court dismissed the plaintiff's complaint without leave to amend because the plaintiff automobile dealership and its owner had failed to reveal the requisite economic interest by the automobile manufacturer (alleged tying seller) in the services or materials sold by six equipment manufacturing firms (alleged tied sellers). The court held that a plaintiff must show that the tying arrangement involves a seller who competes in the tying product's line of commerce as well as participates for profit in the tied product market. *Id.* at 904. The court concluded that the plaintiff had failed to allege a claim since the plaintiff had failed to establish any economic interest on the part of the automobile manufacturer in requiring its customers to purchase equipment from the six companies other than its interest in stimulated sales or the promotion of operational efficiency in the dealerships that used the six companies. *Id.* at 904–05. Similarly, in this case, the plaintiffs' mere allegation that the tied seller's ability to conceal defects in the condominium units resulted in increased sales and economic benefit to the tying sellers does not establish the necessary economic interest element of the tying seller in the tied product market.

In addition, counsel for the Condominium Associations argued to this court that the economic interest requirement might be met as a result of certain checks which were made out to Rubloff (tied seller) by the Condominium Developers (tying sellers). Although the economic interest is flowing in the wrong direction in that situation (from tying seller to tied seller rather than from tied seller to tying seller), counsel for the Condominium Associations argued that the amount of the check might reflect a discount in the customary price of management services, thereby revealing an economic interest on the part of the Condominium Developers (tying sellers) in the management services (tied product) market. We acknowledge the fact that it might be difficult for a plaintiff to allege the economic interest element in a case of secret rebates or discounts where the plaintiff has not had the benefit of discovery. However, in the present case, the Condominium Associations were allowed to proceed with discovery by an order of the district court dated April 12, 1983. Thus, in addition to not even alleging an economic interest in their complaint, the plaintiffs failed to establish any economic interest following nearly one year of discovery proceedings.[4] As counsel for Rubloff argued before this court, all of plaintiffs' discovery requests concerning any alleged economic interest were answered, and the defendants produced thousands of documents pursuant to plaintiffs' requests. In sum, since the Condominium Associations have failed to state either direct or inferential allegations regarding the material elements necessary to state a *per se* violation of the antitrust laws, we affirm the district court's dismissal of the illegal tying claim for failure to state a claim under rule 12(b)(6).

### B. Dismissal for Failure to State a Rule of Reason Violation

In its first opinion of July 22, 1983, the district court focused on the Condomini-

---

**4.** Following the district court's first opinion issued on July 22, 1983, the plaintiffs made a motion to reconsider and discovery continued until the court's second opinion dated March 9, 1984.

um Associations' failure to allege any economic interest of the Condominium Developers in the management services market. In its second opinion of March 9, 1984, following a motion to reconsider by the plaintiffs, the district court addressed the Condominium Associations' allegations under the rule of reason, having previously found that the plaintiffs did not state a *per se* illegal tying claim.[5] The district court found that the Condominium Associations had not stated a claim under the rule of reason because the conduct alleged did not involve an individual using its market power to alter the competitive structure of the market for management services nor an individual using its power in one market to squeeze a profit out of a second market. The district court concluded that the alleged scheme to conceal faults from purchasers did not implicate the type of conduct with which the antitrust laws were concerned.

■ According to the Supreme Court, a plaintiff's failure to state a *per se* illegal antitrust claim does not necessarily prove fatal to his case if he can state a claim under the rule of reason. *Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 499–500, 89 S.Ct. 1252, 1256–1257, 22 L.Ed.2d 495 (1969); *Warner Management Consultants, Inc. v. Data General Corp.*, 545 F.Supp. 956, 966 (N.D.Ill. 1982). The Court in *Fortner* stated that a plaintiff can still prevail on the merits if he can prove that the general standards of the Sherman Act have been violated following a more thorough examination of the purposes and effects of the practices involved. 394 U.S. at 500, 89 S.Ct. at 1257. Thus, even though the Condominium Associations failed to state a claim of *per se* illegal tying, they may still have stated a cognizable claim under the rule of reason. After

an analysis of plaintiffs' allegations, however, we affirm the district court's holding that the plaintiffs have also failed to state a rule of reason violation.

■ In monitoring the use of tie-ins, the goal of the antitrust laws in the tying context is to prevent the economically harmful effects of tie-ins in cases where a seller's power in the market for the tying product is used to create additional power in the market for the tied product. *Jefferson Parish Hospital District No. 2 v. Hyde,* —— U.S. ——, 104 S.Ct. 1551, 1571, 80 L.Ed.2d 2 (1984) (O'Connor, J., concurring, joined by Burger, C.J., Powell, J., and Rehnquist, J.). One of the threshold criteria that a plaintiff must satisfy under both the *per se* and rule of reason analyses in order to show that such an extension of the seller's market power may pose a threat of economic harm and an unlawful restraint of trade is that there is a substantial danger that the tying seller will acquire market power in the tied product market. *Id.* at 1571–72. In the present case, as was explained in the preceding section, the Condominium Associations have failed to allege that the Condominium Developers had any economic interest in the market for management services. Because the plaintiffs did not allege that the Condominium Developers directly participated for profit in the market for management services or that they received any rebates or commissions from Rubloff, we held that the plaintiffs did not state direct or inferential allegations concerning the material elements necessary to state a *per se* antitrust violation. Without an allegation of any economic interest by the tying seller in the sales of the tied seller, we hold that the plaintiffs are also unable to state a cause of action under the rule of reason. In *Warner Management v. Data General,* 545 F.Supp. at 967,

---

5. Over the years, the courts have held that certain types of contractual agreements should be deemed unreasonable as a matter of law and thus *per se* illegal. *See Jefferson Parish Hospital District No. 2 v. Hyde,* —— U.S. ——, 104 S.Ct. 1551, 1556, 80 L.Ed.2d 2 (1984). The character of the restraint produced by a *per se* illegal agreement is viewed as a sufficient basis for presuming unreasonableness without requiring the court to analyze the market context in which the agreement may be found. *Id.* In contrast, the rule of reason approach does not presume illegality, but requires an inquiry into the actual effects of the agreement on competition. *Id.* at 1567.

the court held that a tying claim could not be brought where the seller of the tying goods had no financial interest in the sales of the tied items because the tying seller would not be using its power in the tying product market to invade a second market and the sales of the tied goods would be independently priced by a separate financial entity which presumably would have no power to charge a noncompetitive price. Thus, the court concluded that tying in that situation would not pose any danger to competition and would not be actionable under either the *per se* or rule of reason analysis. *Id.* As the district court in this case concluded, a plaintiff who is unable to allege the economic interest element will be unable to establish that the defendant is using its market power in the tying product market to alter the competitive structure of the tied product market or that the defendant is using its power to obtain a profit in a second market.

In conclusion, the district court's dismissal with prejudice of the Condominium Associations' complaint for failure to state a claim under the federal antitrust laws is affirmed. The district court's dismissal without prejudice of the Condominium Associations' remaining claims for lack of subject matter jurisdiction is also affirmed.