**ROBERT'S WAIKIKI U–DRIVE, INC., et al., Plaintiffs-Appellants,**

v.

**BUDGET RENT–A–CAR SYSTEMS, INC., Defendant-Appellee.**

No. 83–2251.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 1984.

Decided May 8, 1984.

Martin Anderson, David J. Reber, Ronald K.K. Sakimura, Honolulu, Hawaii, for plaintiffs-appellants.

Robert R. Salman, Martin Stein, Janet P. Kane, Phillips, Nizer, Benjamin, Krim & Ballon New York City, for defendant-appellee.

Before ANDERSON, SCHROEDER, and ALARCON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Robert's Waikiki U-Drive, Inc. (Roberts) brought suit against Budget Rent-A-Car Systems, Inc. (Budget), alleging that Budget violated federal antitrust and Hawaii unfair competition laws. The district court granted Budget's summary judgment motion on the antitrust claims. After trial and a special verdict returned by the jury, the court entered judgment for Budget on the unfair competition claims. We affirm.

## I. BACKGROUND

The district court presented a detailed description of the facts in its decision on the summary judgment motions. 491 F.Supp. 1199 (D.Hawaii 1980). We offer only a summary of the facts here.

In 1971, Budget and Aloha Airlines entered into an agreement to develop a "fly-drive" program. Under this agreement, Aloha passengers received a special $7.00 first-day rental rate for Budget cars. The regular rate was $14.00. Aloha rebated $7.00 to Budget per car rented, and this rebate was supposed to reflect Aloha's share of the fly-drive advertising costs paid for by Budget. The $7.00 fly-drive remained in effect through September, 1973. At that time, a new program was developed in which Aloha did not pay Budget on a per car basis, but instead a lump sum purportedly for its share of advertising costs. The post-$7.00 fly-drive agreement lasted until 1975.

In April, 1972, Budget and Pan American World Airways began a similar program. In it, Pan Am paid Budget $5.00 per rental.

In June, 1972, the Civil Aeronautics Board (CAB) began investigating the Budget-Pan Am agreement. The CAB was concerned that the scheme permitted Pan Am to circumvent § 403(b) of the Federal Aviation Act, 49 U.S.C. § 1373(b) (1976), which required air lines to charge customers pursuant to prescribed tariffs. The CAB closed its investigation of the Budget-Pan Am agreement without determining the legality of the arrangement. Roberts contends that the CAB ceased its investigation because Pan Am submitted falsified documents which stated that Pan Am reimbursed Budget solely on its share of advertising costs rather than on a per car basis.

In 1973, the CAB began a similar investigation of the Aloha-Budget fly-drive agreement, culminating in a 1975 order requiring Aloha to cease and desist participation in the program. On review, the Court of Appeals for the District of Columbia Circuit upheld the CAB insofar as it found that the $7.00 fly-drive program constituted illegal rebating. It did not, however, find substantial evidence to support the CAB's holding that the post-$7.00 agreement was illegal. *Aloha Airlines, Inc. v. CAB*, 598 F.2d 250 (D.C.Cir.1979).

In January, 1977, Roberts commenced this action, claiming that through the fly-drive agreements Budget violated: (1) Section 1 of the Sherman Act, 15 U.S.C. § 1 (1976) (tying arrangement); (2) Section 2 of the Sherman Act, 15 U.S.C. § 2 (1976) (attempt to monopolize); (3) Section 7 of the Clayton Act, 15 U.S.C. § 18 (1976) (illegal merger); and (4) Hawaii statutory and unfair competition laws.

In January, 1980, each side filed motions for summary judgment. The district court, Judge Samuel P. King presiding, granted Budget's motion on the antitrust claims, and determined that Roberts may proceed to trial on the unfair competition claims. 491 F.Supp. 1199.

In 1982, Judge King became ill and Judge Marion J. Callister of the District of Idaho, sitting by designation, assumed control of the action. Judge Callister denied Budget's renewal of its motion for summary judgment on the unfair competition claims. The action was tried in June of 1982, with the court entering judgment in favor of Budget after the jury returned special verdicts. Roberts' motion for new trial was denied.

## II. ANALYSIS

On appeal, Roberts does not pursue its claims that the fly-drive agreements constituted violations of § 2 of the Sherman Act and § 7 of the Clayton Act. Instead, Roberts argues that the court erred in granting summary judgment on its claim that the fly-drive agreements constituted an unlawful tying arrangement under Sherman Act § 1 and that the district court should have granted it a new trial on the unfair competition claims.

### A. *Sherman Act § 1*

On summary judgment, the district court rejected Roberts' claim that the fly-drives violated § 1 of the Sherman Act either as per se illegal tying arrangements or under the rule of reason. We agree with and adopt the district court's reasoning in its opinion reported at 491 F.Supp. 1206–10, 1212–17, and add the following observations.

Notwithstanding Roberts' assertions to the contrary, summary judgment may be appropriate in antitrust actions when there is no "significant probative evidence tending to support the complaint." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *see Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.*, 637 F.2d 1376, 1381 (9th Cir.), *cert. denied*, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981). Especially in cases where motive and intent are not determinative, summary judgment may be used in antitrust actions. *Roberts v. Elaine Powers Figure Salons, Inc.*, 708 F.2d 1476, 1478 (9th Cir.1983). Our review, which is *de novo*, *id.*, convinces us that summary judgment was called for in this case.

### 1. *Per Se Illegal Tying Arrangement*

■ Simply stated, a tying arrangement is when "a seller refuses to sell one product (the tying product) unless the buyer also purchases another (the tied product)." *Elaine Powers*, 708 F.2d at 1478–79. Three primary elements establish a per se illegal tying arrangement: (1) a tie-in between two distinct products or services; (2) sufficient economic power in the tying product market to impose significant restrictions in the tied product market; and (3) an effect on a not-insubstantial volume of commerce in the tied product market. *Id.* Roberts argues, and we assume, that it had adequate support for the first and third elements. It is the second element which concerned the district court. Another concern of the court involved the related requirement that there must be some modicum of coercion exerted upon the purchaser of the tied product by the seller of the tying product. *Id.* The court also found another element missing, which is the seller of the tying product must have an economic interest in the tied product for there to be per se illegality. *Id.*

In effect, Roberts reverses the ostensible nature of the fly-drive agreements to fit them into the scheme of per se illegality. Although the fly-drives appear to involve discounted car fare, Roberts states that because the airlines rebated some or all of the rental discount to Budget, the fly-drives actually involved discounted air fare. Roberts then argues that discount air fare is the tying or desired product, and regular car rental rates are the tied product. As did the district court, we accept Roberts' recharacterization of the fly-drives for the sake of argument. Nonetheless, as the court found, Roberts' claims do not meet the requirements of per se illegality.

The Supreme Court recently discussed per se illegal tying arrangements in the case of *Jefferson Parish Hospital District No. 2 v. Hyde*, —— U.S. ——, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). In *Hyde*, the court emphasized the importance of the coercion element, stating, "the essential characteristic of an invalid tying arrange-ment lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." —— U.S. at ——, 104 S.Ct. at 1558. The Court went on to state that "[p]er se condemnation ... is only appropriate if the existence of forcing is probable. —— U.S. at ——, 104 S.Ct. at 1560–61 (footnote omitted). In turn, forcing (or coercion) is likely if the seller has power in the tying product market. *Id.* For example, if the seller has a patent on the tying product, or has a high market share, or if the tying product is so unique that competitors are unable to offer it, the court will assume adequate market power exists. *Id.*

The district court correctly rejected Roberts' claim that discounted air fare is so unique that market power, and therefore coercion of buyers in the car rental market, were sufficiently shown to support a per se claim. All Roberts' claims show is the existence of a lower price for two items bought as a package. Rental cars and air fare can be purchased separately. Even accepting Roberts' claim that discounted air fare is illegal and therefore "unique," consumers were not forced into purchasing either it, or a Budget rental car. "[W]here the buyer is free to take either product by itself there is no tying problem even though the seller may also offer the two items as a unit at a single price." *Hyde*, —— U.S. at —— n. 17, 104 S.Ct. at 1558 n. 17 (quoting *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 6 n. 4, 78 S.Ct. 514, 518 n. 4, 2 L.Ed.2d 545 (1958)); *see Levicoff v. General Motors Corp.*, 551 F.Supp. 98, 102 (W.D.Pa.1982), *aff'd* 722 F.2d 732 (3d Cir.1983).

The district court also correctly recognized that the airlines did not have a sufficient economic interest in the tied product for the fly-drives to constitute per se illegal tying arrangements. In the typical tying scheme, the seller of the tying product also sells the tied product. The tying product seller's interest need not be so direct, how-

ever, as long as the seller has an economic interest in the sale of the tied product. *Elaine Powers*, 708 F.2d at 1480; *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1216 (9th Cir.1977). The airlines did not have an adequate interest in the sale of Budget car rentals. Their interest did not go beyond promoting the package in order to sell airplane seats. Simply because Aloha paid $1.00 less to Budget if its employees sold the package does not change the result that, in all cases, it paid Budget if and when a passenger decided to rent a Budget car after flying on Aloha Airlines.

The holding in *Elaine Powers* does not aid Roberts' claim. In that case, this court reversed the grant of summary judgment because sufficient factual questions existed concerning whether a franchisor of figure salons had an interest in a bookkeeping service that it required the franchisees to use. In *Elaine Powers* there was evidence tending to show that the bookkeeping service made direct payments to the franchisor and that the owners of the bookkeeping service were also employees (one was paid while the other purportedly was not) of the franchisor. No such community of interest is present in this case. The airlines' interest in promoting and selling the fly-drive package is not adequate to support a per se illegal tying claim.

### 2. *Rule of Reason*

Roberts also claimed, as it clearly may, that the fly-drives were an unlawful restraint of trade under the rule of reason. *See Hyde*, —— U.S. at ——, 104 S.Ct. at 1564–66; *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 541 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984).

■ To succeed on a rule of reason claim, an antitrust plaintiff must prove that the restraint in question injures competition in the relevant market. *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 291 (9th Cir.1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). In support of its motion for summary judgment, Budget offered evidence tending to show

that the Hawaii car rental market was highly competitive during the early 1970's. In response, Roberts made conclusory allegations that it was harmed by the fly-drive agreements. As the district court recognized, injury to the antitrust plaintiff alone is not sufficient to prove injury to competition. *Kaplan*, 611 F.2d at 291; *see Cascade Cabinet Co. v. Western Cabinet & Millwork, Inc.*, 710 F.2d 1366, 1373 (9th Cir.1983).

For this reason, and those discussed by the district court, we affirm the dismissal of Roberts' claim that the fly-drives were illegal under the rule of reason.

### B. *Unfair Competition*

■ Roberts moved for a new trial after the district court, following special verdicts by the jury, dismissed the claims that the fly-drives constituted a violation of Hawaii's unfair competition statutes, Haw. Rev.Stat. §§ 480–2, 480–13. We review the district court's denial of the motion for abuse of discretion. *Traver v. Meshriy*, 627 F.2d 934, 940–941 (9th Cir.1980). We conclude that none of the various grounds asserted by Roberts as error are sufficient to support its contention that the district court should have granted it a new trial.

### 1. *Jury Instructions*

Roberts makes several arguments regarding the adequacy of the jury instructions. In its complaint, Roberts alleged that the fly-drive agreements constituted a violation of both common law unfair competition and the Hawaii unfair competition statute.

■ Initially, Roberts complains that the trial court's instructions totally misapplied the elements of common law unfair competition. Our review of the record convinces us, however, that the case was tried solely on the statutory claim, notwithstanding Roberts' inclusion of the common law claim in its complaint. No common law instruction was proposed and no objection was made to the failure to give such an instruc-

tion. The record is clear that Roberts abandoned its claim.

■ For similar reasons, we reject Roberts' argument that the district court erred in instructing the jury that "knowledge" is an element of Roberts' statutory unfair competition claim. Prior to trial, Judge King ruled that in order to succeed on the unfair competition claim, Roberts must show that its action is in the public interest. C.R. 242 at 1. This burden would be met, the judge concluded, if Roberts proved the allegations in its complaint which stated that Budget knew the fly-drive agreements violated the Federal Aviation Act. The court did not rule that this was the only method available to prove public interest. Judge Callister, who assumed control of the case after Judge King became ill, reached the same conclusion. C.R. 298 at 10. Judge Callister did not hold that knowledge of illegality was the only method to prove public interest. And, as Judge Callister noted in his denial of Roberts' new trial motion, C.R. 393 at 1–2, Roberts did not attempt to use any other means to show its action was in the public interest.

■ We also believe that, contrary to Roberts' assertions, Judge King reasonably interpreted Hawaii law to require a showing that the action is in the public interest. In so doing, Judge King relied on legislative history developed when the unfair competition statute was amended in 1974. Although the legislative announcement relied on by Judge King postdates the original enactment of the statute, it is more than adequate to support a district court's interpretation of the law of the state in which it sits. *See Pacific Mutual Life Insurance Co. v. American Guaranty Life Insurance Co.*, 722 F.2d 1498, 1500 (9th Cir. 1984).

Roberts also argues that the knowledge instruction itself was erroneous. In particular, Roberts states that the instruction incorrectly required the jury to find that Budget *actually* knew of the illegality of the fly-drive agreements. In pertinent part, the instruction stated:

You must consider from all the facts in evidence whether Budget had the required knowledge that the actions of the airlines pursuant to the fly-drive agreements would be in violation of the Federal Aviation Act and the regulations of the CAB enacted pursuant thereto.

R.T. at 3354. The court also submitted special interrogatories to the jury. The pertinent ones asked:

Question 1: At the time of the agreement between Aloha Airlines and the defendant Budget, on the $7.00-a-day fly-drive of September, 1971, did defendant Budget have knowledge that the actions of Aloha Airlines pursuant to the agreement would be in violation of the Federal Aviation Act or the regulations of the Civil Aeronautics Board issued pursuant to those laws so that Budget entered the agreement knowing that such agreement was in violation of such laws or regulations?

Question 2: At any time prior to September 30, 1973, did defendant Budget become informed and know that the agreement of September, 1971, on the $7.00-a-day fly-drive with Aloha Airlines was in violation of the Federal Aviation Act of the United States or the regulations of the CAB?

R.T. at 3363–64. The jury answered no to both interrogatories.

Roberts argues that the court should have given an instruction based on Devitt and Blackmar, *Federal Jury Practice and Instructions*, § 72.06 (3d ed. 1977). This instruction allows a jury to find actual knowledge "if it appears from the evidence in the case that a person had information which would lead a reasonably prudent person to make inquiry through which he would surely learn certain facts...."

■ As a preliminary matter, we agree with Budget's claim that Roberts failed to make an adequate objection to the court's knowledge instruction. On June 28, 1982, at the end of the trial, Roberts submitted its proposed Devitt and Blackmar knowledge instruction. C.R. 361, No. 24. The next day, the judge informed counsel that

in the afternoon the court's tentatively formulated instructions would be given to the parties for review. R.T. at 3092. The next day, the judge heard objections and comments on the instructions. Roberts' counsel never mentioned any displeasure with the knowledge instruction proposed by the court, even though Roberts' counsel did argue that a related part of the same instruction was technically incorrect. R.T. at 3113. Also, Budget's counsel objected to other aspects of the instruction, but still Roberts' counsel never stated that its proposed "should have known" instruction should be given. R.T. 3131–3144.

Under these circumstances, we do not agree with Roberts' claim that no objection was required because the court was well aware of Roberts' concerns with the instruction and further objection would be unavailing. *See Brown v. Avemco Investment Corp.*, 603 F.2d 1367, 1373 (9th Cir. 1979). As opposed to *Brown*, a specific objection and argument could have focused the issue before the court, giving it a chance to modify the instruction to incorporate some or all of the elements of Roberts' proposed instruction. The purpose of Fed. R.Civ.P. 51 is to give the trial court the opportunity to correct potential error, thereby obviating the need for costly new trials. *Brown*, 603 F.2d at 1371. An objection would not have been a pointless formality in this case. *See Harmsen v. Smith*, 693 F.2d 932, 939 (9th Cir.1982), *cert. denied*, — U.S. —, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

■ In any event, we do not find that the knowledge instruction as given warrants a new trial. The district court concluded that knowledge of illegality of the fly-drives was necessary because otherwise Budget's participation did not constitute unfair competition, but instead was a valid method of price competition. The effect of this competition was to give consumers the benefits of lower car rental rates. Budget, as a rental car company, was not subject to the Federal Aviation Act's prohibition on rebating. Until the CAB action was instituted against Aloha in 1975 and the District of Columbia Circuit affirmed the illegality of the $7.00 fly-drives, 598 F.2d 250, a violation of the Federal Aviation Act was not certain. In this situation, it was a reasonable interpretation of the law to require knowledge of illegality on the part of Budget. The few Hawaii cases which have discussed the unfair competition provisions, Haw.Rev.Stat. §§ 480–2, 480–13, *see, e.g., Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 607 P.2d 1304 (1980), and *Island Tobacco Co. v. R.J. Reynolds Tobacco Co.*, 63 Haw. 289, 627 P.2d 260 (1981), do not require a different conclusion. Judge King's interpretation of Hawaii law, as sustained later in the action by Judge Callister, is reasonable and deserves our deference. *Pacific Mutual Life Insurance Co.*, 722 F.2d at 1500.

Also, the court instructed the jury that it may base its findings on circumstantial as well as direct evidence. R.T. at 3345. In effect, this allowed the jury to determine that because of the underlying facts, Budget must have known the fly-drives were illegal. In closing argument, Roberts stressed this and repeatedly pointed to evidence which illustrated that Budget should have known of the illegality. *E.g.*, R.T. at 3184–96. Viewing the instructions as a whole and in light of the arguments they permitted counsel to make, we see no error. *See Van Cleef v. Aeroflex Corp.*, 657 F.2d 1094, 1099 (9th Cir.1981).

### 2. *Sufficiency of the Evidence*

■ Roberts also argues that, even if a showing of "knowledge" was a proper prerequisite to recovery, the evidence plainly established that Budget officials knew the fly-drives were illegal. We must sustain the jury's verdict if there was substantial evidence to support it. *See Angle v. Sky Chef, Inc.*, 535 F.2d 492, 494 (9th Cir.1976).

■ Our review of the record convinces us that the jury had adequate support to find Budget lacked the requisite knowledge. The question is largely one of credibility. We must assume that the jury believed the statements of Budget's witnesses who testified they did not know that

during the relevant time period the rebating feature of fly-drive agreements presented a violation of the FAA. The jury also accepted the explanations of Budget officials for conduct which might have led one to infer Budget had knowledge. The question is a close one, but we will not overturn a jury's credibility findings without more compelling reasons for doing so.

### 3. *Exclusion of Evidence*

 Roberts also states that the trial court erroneously excluded evidence that pertained to Budget's knowledge of illegality. Our review is directed to the question whether the trial judge abused his discretion by failing to admit the evidence. *Pierce Packing Co. v. John Morrell & Co.*, 633 F.2d 1362, 1364 (9th Cir.1980). We conclude he did not.

The excluded evidence pertained to the early Budget-Aloha fly-drive agreements. These were not at issue in the action. In particular, the evidence related to the knowledge of Aloha officials that the early fly-drives were illegal. We are unpersuaded that this evidence should have been admitted. Its relevance was slight and its potential for confusion and prejudice was substantial. *See* Fed.R.Evid. 403.

Roberts makes one final contention on appeal. At trial it attempted to prove that the fly-drive agreement entered into by Budget and Aloha after the $7.00 fly-drive was terminated in 1973 also violated the Federal Aviation Act. Under the post-$7.00 fly-drive, Aloha paid Budget a lump sum for advertising. In the administrative proceeding against Aloha, the CAB concluded this later program was illegal, but on appeal the District of Columbia Circuit reversed for lack of substantial evidence. 598 F.2d at 261.

In its Exhibit No. 210, Roberts attempted to fill in the gap in evidence by showing the amount Aloha gave Budget exceeded the costs of advertising, and therefore the payment subsidized Budget's car rentals the same as under the $7.00 fly-drive. Exhibit No. 210 was a series of documents and contained notes of Budget's treasurer

which, Roberts states, showed such a subsidy. The court excluded the exhibit, however, because of lack of foundation and because it was only an estimate of what might occur in 1974.

The trial court did not abuse its discretion by refusing to admit the exhibit. Surely, it was reasonable for it to conclude that better evidence, such as actual number of packages sold, should have been used to show whether the post-$7.00 fly-drives were illegal.

### III. CONCLUSION

The antitrust tying arrangement claims were correctly decided by the district court on summary judgment. There is no error warranting a new trial. The judgment is

AFFIRMED.