892 F.2d 1046
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Innotron DIAGNOSTICS, Plaintiff-Appellant,
v.
ABBOTT LABORATORIES, Defendant-Appellee.
 No. 88-6511.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 3, 1989.
Decided Dec. 15, 1989.
 
 Before TANG, CYNTHIA HOLCOMB HALL, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Innotron Diagnostics ("Innotron") appeals the district court's partial summary judgment dismissal of its Sherman Act antitrust claims against Abbott Laboratories ("Abbott"). We affirm.
 
 DISCUSSION
 1. Sherman Act Section 1 Claim
 
 3
 Innotron asserts that the district court erred when it dismissed the Sherman Act Section 1 claim. We disagree.
 
 
 4
 We conclude that Innotron has failed to produce enough evidence to create a genuine issue of material fact; that is, enough evidence to allow a reasonable jury to find in its favor on whether Abbott forced buyers of its TDx to purchase its reagents. See Jefferson Parish Hospital Dist. No. 2 v. Hyde, 466 U.S. 2, 12 (1984) (tying involves forcing a buyer's purchase of a tied product).
 
 
 5
 Innotron produced seven pieces of evidence to support its claim: (1) increased TDx sale price; (2) fall of TDx placements to 8%; (3) Dr. Griffin's testimony; (4) the service plans; (5) the hospital buyers' testimony; (6) Abbott pricing of the RAP option to deter TDx purchase; and (7) Abbott's enforcement of its RAP contracts.
 
 
 6
 Of this evidence, only inferences from two pieces of evidence (the TDx price increase and the TDx decline as a percentage of new placements) support Innotron's position at all. However, these two pieces of evidence are suspectible to other inferences besides coercion. For example, each TDx price increase was accompanied by new improvements. Therefore, a possible inference is that Abbott tied its price increases to improvements. Even without improvements, price increases are not necessarily evidence of coercion. Price increases could be a legitimate attempt to maximize profits in the tying product market. See id. at 14 ("When the seller's power is just used to maximize its return in the tying product market, where presumably its product enjoys some justifiable advantage over its competitors, the competitive ideal of the Sherman Act is not necessarily compromised."). And the decline in placements could have reflected saturation in the large hospital market.
 
 
 7
 There is no other evidence that Abbott coerced buyers into purchasing both its TDx and its reagents. Griffin's testimony is not relevant. Griffin's analysis never touches on whether a buyer had to take Abbott's reagents over Innotron's reagents due to a tie. This is the relevant inquiry because if a buyer could purchase an Abbott TDx and still save money by purchasing Innotron reagents, then the essence of tying--forcing a buyer to take an undesired tied item--does not exist. See id. at 12. Griffin's testimony merely indicates that Abbott made the RAP package more attractive than the separate purchase of Abbott's TDx and Abbott's reagents. But a seller's decision to offer a package sale is not necessarily evidence of coercion. See Robert's Waikiki U-Drive v. Budget Rent-A-Car, 732 F.2d 1403, 1407 (9th Cir.1984).
 
 
 8
 Abbott's service plan also fails to support Innotron's tying claim. For the service plans to constitute evidence of tying, Innotron would not only have to show that TDx purchasers needed to have a service plan but also that only the service plan with the reagents constituted the economical option. Innotron failed to offer evidence on either point.
 
 
 9
 Nor can Innotron rely on the hospital buyers' testimony as evidence in its favor. The hospital buyers who testified that they wanted to use Innotron's reagents instead of Abbott's had already signed RAP contracts that prevented their using competing reagents. Innotron failed to offer any evidence that Abbott forced an uncommitted hospital buyer to sign a RAP instead of purchasing Abbott's TDx and using competing reagents.
 
 
 10
 Furthermore, Innotron cannot point to the fact that Abbott priced the RAP option to deter TDx purchase as proof of its tying allegation. Making a package sale attractive is not evidence of coercion so long as the buyer freely can purchase either item separately. See id. Here, Innotron has produced no evidence that a buyer could not economically purchase either item (the TDx or the reagents) separately. Thus, the fact that Abbott more attractively priced the RAP option is not evidence of coercion.
 
 
 11
 Lastly, the fact that Abbott rigorously enforced the already signed RAP contract does not bear on whether Abbott forced buyers to sign a RAP.
 
 
 12
 In sum, then, for a jury to find in Innotron's favor, it would have to draw inferences from the price increase and the placement decline which are unreasonable given the lack of supporting evidence.[1]
 
 2. Sherman Act Section 2 Claim
 
 13
 Innotron asserts that the district court erred when it dismissed the Sherman Act Section 2 claim. We disagree.
 
 
 14
 We reject Innotron's claim because the conduct that Innotron relies on to satisfy the unreasonable restriction of competition element of a monopolization claim or the anticompetitive element of an attempted monopolization claim is precisely the same conduct that Innotron relied on in its tying claim. See Foremost Pro Color, Inc. v. Eastman Kodak Co., 703 F.2d 534, 543 (9th Cir.1983) ("Because the conduct Foremost alleged in support of its section 1 tying claim is not anticompetitive, it is of no assistance to Foremost's efforts to state a claim for monopolization or attempted monopolization ..."), cert. denied, 465 U.S. 1038 (1984). Nowhere in its opening or reply brief does Innotron highlight conduct separate and distinct from its tying claim to support its Section 2 claim.
 
 AFFIRMED.[2]
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We do not address Innotron's challenge to Abbott's lawyers' analysis about price savings because that analysis does not bear on the sufficiency of Innotron's evidence
 
 
 [2]
 We refuse to decide whether Innotron has offered enough evidence on its rule of reason claim to defeat summary judgment because Innotron failed to raise this issue below. See Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1477 (9th Cir.1989) (as a general rule this court will not consider issues raised for the first time on appeal)
 We also conclude that Innotron failed to raise the leverage monopolization issue below. Therefore, we also decline to address this issue.
 In its reply brief, Innotron alleges that it raised this issue below because "the district court expressly held that Innotron had not proven leverage conduct violative of § 2." We reject this allegation for several reasons. First, all the district court did was use the term "economic leverage" and state that "monopoly power was leveraged" while discussing why a case was not applicable. The district court never expressly held that Innotron had failed on its monopoly leverage theory. Memorandum Opinion at 14-15. Second, the case the district court was distinguishing, SmithKline Corp. v. Eli Lilly & Co., 575 F.2d 1056 (3rd Cir.), cert. denied, 439 U.S. 838 (1978), never discussed the monopoly leverage theory as a separate basis for liability under Section 2. The SmithKline court decided the case on the basis of a monopolization theory. Id. at 1062. Indeed, the SmithKline case was decided before the landmark Second Circuit case, Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d 263 (2d Cir.1979), cert. denied, 444 U.S. 1093 (1980), that outlined the monopoly leverage theory as a separate basis for liability. Finally, Innotron's first amended complaint, the latest complaint according to the excerpt of record, mentions monopolization and attempted monopolization but does not refer to the monopoly leverage theory.