92 F.3d 1192
 1996-2 Trade Cases P 71,567
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
David G. HEALOW, Plaintiff-Appellant,
v.
ANESTHESIA PARTNERS, INC.; Anesthesia Partners of Montana;
and Saint Vincent Hospital & Health Center, Inc.,
Defendants-Appellees.
 No. 95-35241.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 5, 1996.
Decided Aug. 5, 1996.
 
 Before: FLETCHER, NOONAN, AND RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 PROCEEDINGS BELOW
 
 2
 David Healow, plaintiff-appellant, filed suit in state court in Montana alleging breach of contract, tortious interference of contract, breach of covenant of good faith and fair dealing and state and federal antitrust claims against St. Vincent Hospital and Health Center (St. Vincent or the Hospital), Anesthesia Partners of Montana, P.C. (Partners P.C.), and Anesthesia Partners, Inc. (Partners, Inc.). St. Vincent removed the case to the federal district court for Montana because the case involved a federal question.
 
 
 3
 Healow moved the district court for partial summary judgment, and St. Vincent, Partners P.C., and Partners, Inc. moved for summary judgment on all issues. The district court granted summary judgment for the defendants on all issues. Healow appeals the district court's grant of summary judgment.
 
 FACTS
 
 4
 St. Vincent is a private, non-profit hospital in Billings, Montana that permits physicians to practice on its premises. These doctors are usually referred to as the "medical staff." The Hospital is governed by a board of directors, while the medical staff is governed by a set of bylaws. The bylaws provide that they "shall, when adopted and approved, be equally binding on the Board of Directors and the Medical Staff"; both the medical staff and the Board approved the bylaws in 1990. David Healow is an anesthesiologist who is a member of St. Vincent's medical staff and who provided anesthesia services at the hospital from June 1984 through September 1992.
 
 
 5
 In the late 1980's the President of St. Vincent, James Paquette, became aware of problems with the management of the anesthesiology department. The Vice President of St. Vincent for Medical Affairs, Dr. McClave, sent Paquette a memo detailing problems in the department including conflicts over scheduling, the type of anesthesia to be delivered, coverage for obstetrical cases, and other organizational problems. Later that year, St. Vincent created an ad hoc committee to review the department. The committee contacted persons affected by the anesthesiology department, and McClave sent all members of the medical staff a memorandum stating that the ad hoc committee was investigating the anesthesiology department's operations and policies. The memo stated that the purpose of the review was to
 
 
 6
 review alternative methods of organization, functional roles for CRNA's [certified nurse anesthesiologists] and MD anesthesiologists, case scheduling, supervision, quality assurance and all related organizational issues. Among the options being considered will be the closure of the department by means of an exclusive contract with a particular provider or a group of providers to provide anesthesia services. The [ad hoc committee] will make a report to the Board of Directors regarding its findings and recommendations.
 
 
 7
 The Board strongly encourages any interested members of the Medical Staff ... to submit written evidence, statements or other information with respect to [these] issues....
 
 
 8
 The ad hoc committee performed a survey of staff and interviewed many of them. It recommended that the Board of Directors establish a medical director of anesthesia who would have a contractual relationship with the Hospital and would subcontract with individual anesthesiologists to provide anesthesia services to the Hospital. Although many anesthesiologists had specifically objected to such a system, the Board resolved to close the anesthesia department and enter into an exclusive contract with an outside company to provide anesthesia services.
 
 
 9
 St. Vincent entered into a three-year exclusive contract with Partners P.C. for the provision of general surgical and obstetrical anesthesia. Partners, Inc. provides management services for a fee to Partners P.C. Under the agreement with the Hospital, Partners P.C. was to contract with anesthesiologists to provide service under the contract. Between June 30, 1992 and September 1, 1992, every anesthesiologist on St. Vincent's staff was offered the opportunity to apply to be an independent contractor under the agreement with the hospital, and every anesthesiologist who applied was accepted. The hospital encouraged Healow to apply, but he did not.
 
 
 10
 Under the contract between Partners P.C. and St. Vincent, St. Vincent pays Partners P.C. $240,000 a year for Partners P.C.'s management of the department. An expert for the defendants stated that in actuality, the hospital bears 75% of this cost, while the staff anesthesiologists bear 25%.
 
 
 11
 There are three operating room locations in Billings: St. Vincent, Deaconess, and Northern Rockies Surgicenter. St. Vincent handles about 53% of the cases involving anesthesia, Deaconess about 40%, and Northern Rockies Surgicenter about 7%. Partners P.C. provides 100% of the obstetrical anesthesia services in Billings and 83.6% of such services in Billings and connected counties. Healow contends that the average cost per unit of anesthesia has increased from $38.74 per unit of anesthesia before Partners P.C. took over to $45 per unit as of January 1993. Partners P.C. sets a uniform rate for all anesthesia services that the anesthesiologists who are associated with Partners P.C. provide.
 
 STANDARD OF REVIEW
 
 12
 This court reviews the district court's grant of summary judgment on all of Healow's causes of action de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992).
 
 ANALYSIS
 
 13
 I. THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT FOR THE DEFENDANTS ON HEALOW'S BREACH OF CONTRACT CLAIMS
 
 
 14
 A. ST. VINCENT'S ALLEGED VIOLATION OF ITS BYLAWS REQUIRING EXECUTIVE COMMITTEE APPROVAL OF THE PLAN TO CREATE A CLOSED ANESTHESIA DEPARTMENT WAS NOT MATERIAL
 
 
 15
 Healow argues that St. Vincent violated its bylaws when the board of directors voted to close the anesthesiology department without guidance from the Executive Committee and that this violation should be actionable as a breach of contract. We need not decide whether the bylaws constitute an enforceable contract because even if they did the Hospital's violation was not material. The Bylaws provide at § 11.5-2(f) that the Executive Committee shall consider and recommend "action to the Board of Directors and Administration of the Hospital on all medico-administrative matters." Although it is true that the Executive Committee did not perform such a function in deciding to close the anesthesiology department, the Ad Hoc committee did. The Ad Hoc committee solicited the opinions of the members of the anesthesiology department and of the medical staff as a whole and received a large number of responses. Although St. Vincent may have violated the precise terms of the bylaws, it has not done so materially. Thus, we find that the district court was correct to grant summary judgment for St. Vincent on this breach of contract claim.
 
 
 16
 B. ST. VINCENT DID NOT VIOLATE ITS BYLAWS REGARDING THE QUALIFICATIONS FOR DOCTORS BY REQUIRING HEALOW TO BECOME AFFILIATED WITH ANESTHESIA PARTNERS
 
 
 17
 The district court found that there was no material dispute of fact that St. Vincent did not violate its bylaw § 8.2-2, which lists education, training, experience, ability and judgment as the criteria for privileges to practice medicine at St. Vincent by closing its anesthesia department and requiring all anesthesiologists to become affiliated with Partners P.C. Healow has not raised a genuine issue of material fact as to whether St. Vincent added a new criterion for the privilege of practicing medicine; instead, every material fact points to the Hospital's having made a policy decision to close its anesthesia department and enter into an exclusive contract with Partners P.C. for the provision of anesthesia services at the Hospital.
 
 
 18
 C. ST. VINCENT DID NOT VIOLATE ITS BYLAWS BY NOT GIVING HEALOW NOTICE AND A HEARING BEFORE NOT PERMITTING HIM TO PRACTICE WITH ST. VINCENT
 
 
 19
 Healow claims that St. Vincent violated bylaw Sections 15.1-1(a)(vii) and 15.1-3, which entitle a doctor to notice and a hearing if his privileges are restricted, reduced, suspended, or revoked. Healow claims that before St. Vincent closed its anesthesiology department he was entitled to notice and a hearing.
 
 
 20
 The district court correctly concluded that Healow was not entitled to notice and a hearing because these bylaws concern disciplinary action directed at an individual physician, not the closure of an entire department. Indeed, § 15.1-2(b) of the bylaws contains an exception to the notice and hearing requirement that makes clear that Healow was not entitled to a hearing before St. Vincent shut down the department:
 
 
 21
 An action listed in Section 15.1-1(a) that is taken under Section 15.1-2(a) in response to a general policy of the Hospital ... shall not entitle the affected practitioner to the procedural rights provided under this Fair Hearing Plan unless the practitioner produces evidence to the satisfaction of the President of the Hospital that raises a reasonable question as to whether the ... Hospital's policy was properly implemented....
 
 
 22
 Here, the hospital made a general policy decision that was not directed at Dr. Healow individually. Thus, the district court was correct to find that St. Vincent did not violate this bylaw.
 
 
 23
 II. THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT FOR ST. VINCENT ON THE GROUND THAT IT DID NOT BREACH THE COVENANT OF GOOD FAITH AND FAIR DEALING.
 
 
 24
 Healow does not develop well his claim that St. Vincent breached the covenant of good faith and fair dealing implied in its bylaws. His argument seems to be that the hospital breached the covenant of good faith and fair dealing when it closed the anesthesiology department when many anesthesiologists opposed it doing so.
 
 
 25
 The implied covenant of good faith and fair dealing is not a cause of action for tortious breach of contract. See Story v. City of Bozeman, 791 P.2d 767, 773-775 (Mont.1990) (explaining the history of the covenant in Montana). Rather, it "imposes an obligation of good faith" in the performance or enforcement of a contract and is breached when a party acts arbitrarily, capriciously, or unreasonably in contravention of the justified expectation of the parties. Id. at 774-75. In light of the extensive consultation with the medical staff undertaken by the Board through the ad hoc committee, Healow has not raised a genuine issue of material fact that would suggest that St. Vincent acted arbitrarily and capriciously.
 
 
 26
 III. THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT FOR ST. VINCENT, PARTNERS P.C., AND PARTNERS, INC. ON HEALOW'S TORTIOUS INTERFERENCE CLAIM.
 
 
 27
 Healow claims that St. Vincent Partners P.C. and Partners, Inc. tortiously interfered with his business relations with surgeons and patients by closing the department down and not allowing him to practice at the hospital because he was not associated with Partners P.C. The district court dismissed, but did not specifically address, this claim on summary judgment. Reviewing this claim de novo, we find the district court correctly dismissed this cause.
 
 
 28
 In order to assert a prima facie claim of tortious interference with business relations, a plaintiff must show that a defendant "intentionally committed a wrongful act without justification or excuse." Richland Nat. Bank & Trust v. Swenson, 816 P.2d 1045, 1051 (Mont.1991). A plaintiff must show the defendants acts were 1) intentional and willful; 2) calculated to cause damage to the plaintiff in his business; and 3) done with the unlawful purpose of causing damage or loss without justifiable cause on the defendant's part. Id. Healow has not met this burden.
 
 
 29
 Healow has not raised a genuine issue of material fact that the hospital acted unlawfully in closing the department. Furthermore, there is no genuine issue of material fact that the hospital closed the department with the intention of interfering with Healow's relations with other surgeons or his patients. Rather, there is no dispute of material fact that the hospital had no such intention since it invited him (Healow does not dispute this fact) to sign up with Partners P.C. so that he might continue to work as an anesthesiologist at St. Vincent. Thus, Healow has failed to establish a prima facie case of tortious interference.
 
 
 30
 IV. THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT FOR ST. VINCENT, PARTNERS P.C., AND PARTNERS, INC. ON HEALOW'S ANTITRUST CLAIMS.
 
 
 31
 Healow waived many of his antitrust claims by failing to address them in his brief to this court. His federal claims of price fixing and tying and his state antitrust claims remain. Summary judgment is appropriate when a plaintiff's antitrust theories are speculative, unreasonable, economically senseless, or do not make practical sense. Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 468-69 (1992).
 
 
 32
 Healow claims that St. Vincent, Partners P.C., and Partners, Inc. conspired to fix prices and created an illegal tying arrangement in the delivery of anesthesia services in violation of the Sherman Act and Montana state law. Because Montana modeled its laws after the federal antitrust laws, the Supreme Court of Montana has stated that it gives "due weight" to federal interpretation of antitrust violations. Smith v. Video Lottery Consultants, Inc., 858 P.2d 11, 13 (Mont.1993). Thus, we will evaluate Healow's state and federal antitrust claims under the applicable federal case law.
 
 A. PRICE FIXING
 
 33
 A necessary requirement for any plaintiff bringing suit under the federal antitrust laws is a showing of antitrust injury--an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). Even a plaintiff who challenges an action that is per se illegal like price fixing must show that the defendants' illegal conduct has caused him antitrust injury. Newman v. Universal Pictures, 813 F.2d 1519, 1522-23 (9th Cir.1987), cert. denied, 486 U.S. 1059 (1988).
 
 
 34
 Healow argues that the injury to competition is that he is prevented from providing obstetrical anesthesia because St. Vincent is the only hospital in Billings where such services are provided. If this injury is in regard to his price fixing claim, Healow has failed to establish a proper antitrust injury. The antitrust laws are not concerned with injury to competitors, but with injury to competition. cf. Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 585 n. 8 (1986) (competitors "may not complain of conspiracies that ... set minimum prices at any level). That one anesthesiologist is prevented from practicing anesthesia is not an injury to competition unless Healow can show that it has had an anticompetitive effect. See Les Shockley Racing, Inc. v. National Hot Rod Ass'n, 884 F.2d 504, 508 (9th Cir.1989) (antitrust plaintiffs "must plead and prove a reduction of competition in the market in general and not mere injury to their own positions as competitors").
 
 
 35
 If Healow contends that the anticompetitive effect is the increase in price of anesthesia, Healow lacks standing to assert such a claim. Under ARCO, Healow must show that he is "adversely affected by an anticompetitive aspect of the defendant's conduct," Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 339 (1990), that is, an increase in price. But Healow does not show that the defendants' efforts to fix prices above the competitive level have harmed him. Customers may be harmed by such a price increase, but as an anesthesiologist, Healow is not. In ARCO, the Supreme Court "decline[d] to dilute the antitrust injury requirement" to allow competitors to bring suit against a maximum price fixing scheme. Id. at 345. If a price fixing scheme produced anticompetitive effects, "consumers ... may bring suit." Id. The Court's reasoning in ARCO applies with equal force here. Healow has not shown why he is entitled to bring this action on the behalf of consumers. The district court was therefore correct to grant summary judgment on this price fixing claim.
 
 
 36
 Furthermore, Healow's price fixing allegations make little sense on the merits. Healow has not shown any economic motivation for St. Vincent to conspire with Partners P.C. to fix prices in anesthesia. Because St. Vincent does not own Partners P.C., receives no compensation for the delivery of anesthesia services by Partners P.C. at St. Vincent, any price increase by Partners P.C. would harm St. Vincent because it would raise the total cost of surgery at the hospital. A price increase would in turn decrease demand for surgery at St. Vincent without St. Vincent sharing in the profits gained from the increased price of anesthesia. Cf. Phillip Areeda, IX Antitrust Law § 1762d, at 337 (1991).
 
 
 37
 If Healow's allegation that he is injured by not being able to practice anesthesiology in Billings boils down to a claim that St. Vincent and Partners P.C. attempted to monopolize the market for anesthesia, Healow has failed to state a valid attempted monopolization claim. As explained above, he has failed to demonstrate antitrust injury, which is a necessary element of an attempt to monopolize. See Pacific Express, Inc. v. United Airlines, Inc., 959 F.2d 814, 817 (9th Cir.) (holding that causal antitrust injury must be proven to establish attempted monopolization), cert. denied, 113 S.Ct. 814 (1992).
 
 B. TYING CLAIM
 
 38
 The tying of the purchase of one product to the purchase of another violates the antitrust laws if 1) there is a tie between two distinct products or services; 2) there is sufficient power in the tying market to impose significant restrictions in the tied market; 3) there is an effect on a not insubstantial volume of commerce in the tied product. Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Systems, Inc., 732 F.2d 1403, 1407 (9th Cir.1984). When a tied and tying product are owned by different parties, as is the case here, a plaintiff must prove a fourth element: that the supplier of the tying product has an "economic interest" in the tied product. Robert's, 732 F.2d at 1407. Healow has failed to do so here. St. Vincent gets no money from Partners P.C. if Partners P.C. provides anesthesia to patients at St. Vincent. Indeed, St. Vincent pays Partners P.C. an annual fee to compensate it for the administrative services it provides to St. Vincent. Because St. Vincent makes no money and receives no benefit from Partners P.C.'s provision of anesthesia at St. Vincent, St. Vincent has no economic interest in the provision of anesthesia by Partners P.C.
 
 
 39
 That St. Vincent is able to reduce its monthly payment of $20,000 to Partners P.C. to $15,000 by having $5000 paid by anesthesiologists does not give St. Vincent an economic interest in the provision of anesthetic services. This price reduction is not keyed to the increase or decrease in the output or price of anesthesia services; rather, St. Vincent requires the anesthesiologists to bear part of the administrative fee charged by Partners P.C. Whether or not Partners P.C. tries to exercise market power through a tying arrangement, St. Vincent can still require the anesthesiologists to bear part of this administrative fee. The fact remains that if Partners P.C. used its alleged market power in anesthesia services to restrict output and raise prices in anesthesia, St. Vincent would be harmed because the overall price for surgical services would increase, in turn decreasing consumer demand for its services without it reaping any of the benefits of the price increase. Hence, the Hospital has no economic interest in the provision of anesthesia services by Partners P.C. Thus, the district court was correct to grant summary judgment on Healow's tying claim.
 
 CONCLUSION
 
 40
 We AFFIRM the district court's grant of summary judgment in favor of St. Vincent, Anesthesia Partners of Montana P.C., and Anesthesia Partners, Inc.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3